[S. F. No. 1491.   In Bank.— April 30, 1901.]

In the Matter of the Estate of JAMES G. FAIR, Deceased. JAMES S. ANGUS et al., Appellants. CHARLES L. FAIR et al., Respondents.

TRUST — EXPRESS TRUST TO CONVEY REAL PROPERTY — INVALIDITY. — An express trust to convey real property to beneficiaries named in the instrument creating the trust, is not lawful, under the statutes of this state, but is forbidden thereby, and is invalid and void.

ID. — PURPOSE OF CODE PROVISIONS AS TO USES AND TRUSTS. — The purpose of the provisions of the Civil Code relating to uses and trusts in real property is to avoid the intricacies of the old system of uses and trusts, and to confine them within very narrow limits, and to exclude all others than those specified in the title on uses and trusts.

ID. — WILL — INVALID DEVISE IN TRUST TO CONVEY — CONSTRUCTION — ESTATE IN REMAINDER NOT CREATED — ABSENCE OF OPERATIVE WORDS. — A devise, in a will, to trustees to transfer and convey the real property to beneficiaries named therein, being invalid and void, must be disregarded, and cannot be construed as creating an estate in remainder in the beneficiaries, where there are no other words in the will which, without the aid of the unlawful trust, would devise any estate to the asserted remaindermen. A will cannot be construed as creating a devise without operative words sufficient to create it.

ID. — LIBERALITY OF CONSTRUCTION OF WILL — INTENTION OF TESTATOR — LANGUAGE OF WILL — LAWFULNESS OF INTENTION. — The rules that a will is to be liberally construed, to effect the intention of the testator, and that the intention of the testator must prevail, do not dispense with the other rules of construction, that the intention must be found in the language of the will, and that the intention which clearly appears therein in unambiguous language must be lawful, else it cannot be effectuated.

ID. — ENGLISH STATUTE OF USES INAPPLICABLE — INVALID TRUST NOT EXECUTED. — The English statute of uses is inconsistent with and repugnant to our whole system of conveyancing and registry, and does not operate, in this state, to execute any use or trust. Under our statute of uses and trusts as now in force, no legal estate vests in the beneficiaries; and under any view of the law of this state, an invalid trust to convey cannot be deemed executed.

ID. — POWERS IN TRUST TO CONVEY. — Powers in trust to convey are trusts within the meaning of the article of the Civil Code on uses and trusts, and, not being enumerated in that article, are forbidden by its terms. [Temple, J., Harrison, J., and Beatty, C. J., dissenting.]

ID. — VESTED ESTATES IN REMAINDER — RULES INAPPLICABLE UNDER TRUST TO CONVEY. — The rules applicable to vested estates in remainder, under valid devises, cannot apply where there is no devise, but only a trust to convey, which can vest no present estate whatever in persons of certain classes of beneficiaries named, who may happen to be alive at the time contemplated for the conveyance, and who can acquire no right other than a contingent right to enforce the execution of the trust to convey.

ID. — INVALID TRUST TO CONVEY AFTER DEATH OF CHILDREN — TRUST FOR LIVES OF CHILDREN VITIATED. — An invalid trust to convey to certain other beneficiaries who should be living at the time of the conveyance, after the expiration of a trust for the lives of his children, for their benefit, vitiates the testator's scheme for the disposition of his property, and carries with it the otherwise valid trust for the lives of the testator's children.

ID. — ESTATE IN FEE INTENDED TO BE VESTED IN TRUSTEES. — A devise to trustees, with power to sell and convey, and to apply the income of the estate of the testator for the benefit of his children during their lives, and to transfer and convey the residue of the estate to certain grandchildren and other beneficiaries living upon the death of the last surviving child, is intended to create an estate in fee in the trustees, and the *quantum* of the estate is not measured by the lives of the children.

ID. — LEGAL EFFECT OF EXPRESS INTENT NOT TO BE VARIED. — The legal effect of the expressed intent of a testator will not be varied under the guise of correction because the testator misapprehended the law. If an illegal mode of executing the intent is expressly provided, the court has no power to substitute a legal mode not expressed.

ID. — POWER OF AUTHOR OF TRUST TO "PRESCRIBE" ULTIMATE OWNERSHIP — CONSTRUCTION OF CODE. — The power conferred by section 864 of the Civil Code upon the author of a trust, in its creation, to "prescribe to whom the real property to which the trust relates shall belong in the event of the failure or termination of the trust," and to "transfer or devise such property subject to the execution of the trust," cannot be construed as authorizing a void trust to convey to be transformed into a valid prescription, which is not otherwise expressed in any manner in the trust.

ID. — LIMIT OF FAVOR OF LAW TO TESTACY — ORDINARY IMPORT OF WORDS. — The favor of the law in the direction of supporting testacy under a will cannot go the length of wresting its words from their ordinary import, and giving them a forced meaning wholly unjustified by anything contained in the instrument.

ID. — TYING UP LARGE ESTATE, AND DISINHERITANCE OF CHILDREN, NOT FAVORED. — The law is not kindly disposed toward the tying up of a vast estate for a long period of years, by a scheme which includes the disinheritance of the testator's children.

APPEAL from a decree of the Superior Court of the City and County of San Francisco partially distributing the estate of a decedent.   Charles W. Slack, Judge.

The facts are stated in the opinion of the court.

Pierson & Mitchell, William M. Pierson, Robert Y. Hayne, and Garret W. McEnerney, for Executors and Trustees, Appellants.

Van R. Paterson, Rodgers & Paterson, and James L. Robinson, for Minor Beneficiaries, Appellants.

Knight & Heggerty, Garber, Boalt & Bishop, John Garber, Charles S. Wheeler, Wilson & Wilson, William F. Herrin, and H. L. Gear, for Charles L. Fair, Respondent.

Lloyd & Wood, for Theresa A. Oelrichs and Virginia Fair, Respondents.

GAROUTTE, J.—This is an appeal from a decree of partial distribution.

Upon the former decision of this case, Mr. Justice McFarland rendered the following opinion, which is now adopted as the opinion of the court upon the questions therein discussed:—

"It seems to be necessary, at the expense of brevity, to state the fifteenth clause of the will here in full.  By the preceding clauses a large number of legacies in money are given to various persons, consisting mainly of brothers and sisters of the decedent, and certain of their children.  The said fifteenth clause—and we put in italics the words which are most important in arriving at a conclusion—is as follows:—

"'Fifteenth.   All the rest, residue, and remainder of my estate, property, and effects, real, personal, and mixed, whatsoever, and wheresoever situated, I give, devise, and bequeath unto my trustees hereinafter named, and to the survivors of them, and to their successors in office, *in trust, for the following uses and purposes;* that is to say:—

"'To have and to hold the same, in trust, during the lives of my daughters, Theresa A. Oelrichs and Virginia Fair, and of my son, Charles L. Fair, and during the life of the survivor of them, and upon the death of such survivor *to transfer and convey* to the children or descendants of my said daughter

Theresa the one-fourth part of said trust property and estate, and to the children or descendants of my said daughter Virginia the one-fourth part of said trust property and estate, and the remaining one half of said trust property and estate *to transfer and convey*, in equal shares, to my brothers and sisters, and to the children of any deceased brother or sister by right of representation. (The language of this clause is taken from the Civil Code of the state of California, section 1386, subdivision 3, as it now exists, and shall bear the same construction as said subdivision of said section, subject, however, to the provisions of paragraph "sixteenth" of this will.) In case either of my daughters die, leaving no children or descendants, the one-fourth part of said trust property and estate herein directed to be *transferred and conveyed* to her children or descendants *shall be transferred and conveyed* to the children or descendants of my other daughter, and if there be none, the same *shall be transferred and conveyed* to my brothers and sisters, and to the children of any deceased brother or sister by right of representation, as aforesaid.

"'In trust, further, during the life or lives of my said daughters and son, and the survivor of them, to hold, manage, and control the said trust property and estate, and monthly to pay over the net income derived therefrom to my said daughters and son in equal proportions, and upon the death of either of my said daughters, to pay over the one third of said net income to which she, if living, would be entitled, to her children or descendants, if any there be, otherwise to my surviving daughter, and upon the death, during the life of my said son, of said surviving daughter, leaving children or descendants, then to her said children or descendants, and if she leaves no children or descendants, then said portion of said net income to become a part of the rest and residue of my estate, and to be disposed of as such under the provisions of this will, and upon the death of my said son, to pay over the one third of said net income to which he, if living, would be entitled, to my said two daughters, in equal proportions, or to the survivor of them.'

"One or two of the other clauses of the will should be briefly noticed. By the seventeenth clause the appellants Angus and others are declared to be the trustees mentioned in the fifteenth clause; and they are authorized to sell any of the trust property, to invest and reinvest the proceeds of sales, to

apply the proceeds to the improvement of other portions of the property, to purchase or acquire other property, to lease any portion of the property, and to borrow or lend such money as they may deem advisable, and to secure repayment of loan by mortgage and other liens, to make compromises and settlements, and to handle the property generally as they may see fit. By clause nineteenth, it is provided that in case of the death, resignation, etc., of any one of the trustees, the remaining trustees, or any two of them, shall have authority to fill the vacancy by a declaration in writing, 'and the title to the trust property and estate shall vest in such new trustee, jointly with the others, *without the necessity of formal or any conveyance to such new trustee.*' By clause twenty-one the testator declares as follows: 'I make no provision for any children of my son, Charles L. Fair, whether born before or after this will, nor any provision for my said son, Charles L. Fair, other than that provided in the "fifteenth" (15) paragraph hereof.' It may be, perhaps, necessary to hereafter mention some of the other clauses of the will.

"In determining whether or not the trusts declared in the fifteenth clause are valid, the primary and most important consideration is, that an express trust to convey real property to beneficiaries is not lawful under the statutes of this state, but is by such statutes forbidden. The main contentions of appellants are based upon the invalidity of such a trust, although in some of their arguments they do contend that such a trust is valid. Clearly, however, such a trust is made by our code invalid. Our law upon the subject shows an intent to avoid the intricacies, frauds, and concealments which were possible under the old system of trusts and uses, whereby the title to real property was allowed to be in one person and the beneficial use in another, to such an extent that the confusion following was intolerable; and the purpose of the code provisions is clearly to confine trusts within very narrow limits, and to allow them only in a few instances where they might be specially used to subserve proper and necessary purposes. Section 847 of title IV of the Civil Code provides as follows: 'Uses and trusts in relation to real property are *those only* which are specified in this title'; and section 857, in the same title, is as follows: 'Express trusts may be created for any of the following purposes.' Then follow four subdivisions, providing the purposes for which express

trusts may be created, and neither of them includes a trust to convey real property, except only as it may be an incident to the trust 'to sell real property, and apply or dispose of the proceeds in accordance with the instrument creating the trust.' And as a trust to convey real property to beneficiaries was one well recognized by the common law, it is quite clear that these provisions of the code were intended to abolish, and do abolish, such a trust. Therefore the attempted declaration of trust, in the decedent's will, to 'transfer and convey,' so far as real property was intended to be affected thereby, was void (and real property, only, is involved in this case). (*Bennalack* v. *Richards*, 116 Cal. 406; *In re Walkerly*, 108 Cal. 656.[1])

"Our provisions about uses and trusts are clearly taken from those of New York on the same subject. Section 857 of our code is nearly identical with section 55 of the Revised Statutes of New York, the main difference being that subdivision 1 of said section 55 merely provides for an express trust 'to sell lands for the benefit of creditors' (4 N. Y. Rev. Stats., 8th ed., p. 2437); and it was held in New York, both before and after the adoption of our codes, that there could be no express trusts as to land, except those enumerated in said section 55. In *Hawley* v. *James*, 16 Wend. 147, Judge Bronson says: 'But there can no longer be any express trusts, except such as are enumerated and defined by the statute, and these are all enumerated in the fifty-fifth section.' In *Gilman* v. *Reddington*, 24 N. Y. 15, the court say: 'Trusts to convey land to a beneficiary are not enumerated in the statutes of uses and trusts'; and in *Hotchkiss* v. *Elting*, 36 Barb. 44, the court say: 'The trust therein mentioned is simply to convey the premises, subject to the reservation, to such person or persons as the wife of the plaintiff should by writing appoint. This is not one of the trusts authorized by law, and is therefore absolutely void.' The foregoing are merely a few of many other New York cases to the same point. (*Townshend* v. *Frommer*, 125 N. Y. 458, 459; *Yates* v. *Yates*, 9 Barb. 340; *Campbell* v. *Low*, 9 Barb. 590, 591; *Voorhees* v. *Presbyterian Church*, 17 Barb. 105; *Cooke* v. *Platt*, 98 N. Y. 37, 38; *Hagerty* v. *Hagerty*, 9 Hun, 176.) The New York statutes contain provisions for 'powers in trust' which are not created by our code, and which will be noticed hereafter.

---

[1] 49 Am. St. Rep. 97, and note.

"But counsel for appellants contend that although the trust to convey be held void, still the will, upon various suggested theories, ought to be construed as devising estates in remainder to the persons of the designated classes. In one phase of the arguments, the words 'to transfer and convey' seem to be treated, substantially, as we might treat surplusage in a pleading, or a covenant for further assurance in a deed; but this view is entirely inadmissible, for the words do not precede or follow, and are not merely additional or supplemental to, any other words which, by themselves, and without the aid of the words 'to convey,' would devise any estate whatever to the asserted remaindermen. The case would have been different if there had been an independent devise followed by a direction to the trustees to convey to the devisees; in that case the words of devise would have created an estate, and the conveyance would have been unnecessary, except, perhaps, as convenient and additional evidence of title. It is true, as counsel say, that courts are liberal and indulgent in the construction of wills. This has been so from an early period in the history of the common law, when it was held that, in a will, the word 'heirs' was not necessary to create a fee where there were other words in the instrument showing an intent to do so, although at that time 'heirs' was absolutely necessary, in a deed, to create a fee, no matter what other language was used. Technical informalities, or grammatical errors, or words which, in legal language, are inapt to express the evident intention of the testator, will be construed as though the proper legal phraseology had been employed; but there must be *some language* used to effectuate that which a litigant claims to have been the intention of the testator. Counsel speak of the rights of the 'devisees,' and say that no conveyance was necessary, because, 'under the devise,' the 'devisees' took a vested, although defeasible, remainder in fee, and that although the trustees took the whole legal estate, still the direction to convey does not render the 'devise' void; but all this assumes that, apart from the trust to convey, there *is*, in the will, a devise in remainder; which is not the fact. Of course, the precise, technical word 'devise' is not necessary; any other word or language expressive of the same action or design would be sufficient; but in this will there is no such language. There is no language whatever upon the subject, other than the
CXXXII. Cal.— 34

direction to transfer and convey; and to eliminate these words would be to leave the estate, after the death of all the decedent's children, entirely undisposed of.

"Appellants indulge in frequent invocations of the rule that the intention of the testator must prevail; and they seek here to apply the rule to the point that this will should be construed as if it directly devised estates in remainder to the classes named, so that the persons of those classes living at the death of the testator would take vested remainders, subject to open and let in after-born children of the classes. But the rule includes the propositions that the intention must be found in the will itself; that where the language of the instrument is unambiguous and perfectly clear, there is no field for the play of construction; that where the testator has clearly expressed one intention, the court cannot impute to him another; that the intention which clearly appears must be lawful; and that a court can, in no instance, make for the testator a new will. Now, in the case at bar it is perfectly clear, beyond even a reasonable doubt, that the testator did *not* intend to devise estates in remainder to persons of the named classes, but intended to devise the whole fee to his trustees, upon trusts to convey, after the expiration of a probably very long period of time, to those persons, so that the latter would receive new estates created by the conveyances. There is no room here for any construction based upon an apparent or presumed unskillfulness, ignorance, or negligence of the testator; the will is in apt legal phraseology; and his intentions are clearly and accurately expressed. Not only are the words 'to transfer and convey' used without any other language indicating in any way an intent to devise estates to persons of the classes named, but those words are used over and over again, — thus showing, *ex industria*, what his fixed purpose was. In order to carry out his scheme he had to provide that his trustees, under certain circumstances, should convey portions of the estate to persons of certain named classes, and that upon the happening of certain events the same portions should be conveyed to other persons of other named classes, so that, to meet these various contingencies, the directions to his trustees had to be frequently repeated; but in no instance did he fail to use the words 'transfer and convey.' Not even by a slip of the pen was he betrayed into using any language that might be construed into a direct devise, — as, for instance, that the property should 'go to,' or

'belong to,' or 'vest in' the classes of persons enumerated. Moreover, when we come to the provision for the appointment of a new trustee, if necessary, we find that *there* he expressly provides that the title to the trust property 'shall vest' in the new trustee without the necessity of any conveyance from the other trustees,—thus showing how material, in the mind of the testator, were the former provisions that the trustees should convey.

"The principle that the intention which a testator has clearly expressed in his will must be followed, and that— applying the principle to the case at bar—the will cannot be construed as intending a direct devise where the clearly expressed intention is otherwise, and that there cannot be a devise without operative words sufficient to create it, is aptly illustrated in *Estate of Young*, 123 Cal. 337. That case goes even further in applying this principle than it is necessary to go in the case at bar, for there the will showed on its face that the testatrix was unlearned and unskillful as a conveyancer, while here the express design was clearly stated in legal language and persistently adhered to. In the Young case the words in the will to be construed were, 'To C. A. Young, my husband, my bank book shall be handet to him with gold watch and chain, also *two deeds*. After my husband deatt the two deeds shall go to Katarina Muhr'; and it was contended that the will should be construed as devising an estate in the land described in the deeds to the husband for life, and remainder in fee to Katarina Muhr; but the court held that the express intent was, merely, that the deeds should be delivered, which amounted to nothing, and that there were no operative words in the will which constituted a devise of the land. Mr. Justice Henshaw, in delivering the opinion of the court, said, among other things, as follows: 'There was no delivery of these deeds during the testatrix's lifetime. What validity they possessed then came from the will, and therefore, if, by the act of the testatrix, title to these lands passed, we must find in the will both an intent to devise them and operative words to effect the intent'; and again, 'There must, in the will itself, be found a clear intent to devise them, and operative words sufficient to create a devise'; and then the language of Buller, J., in the case of *Dacre* v. *Dacre*, 1 Bos. & P. 251, is quoted with approval, as follows: 'I agree that the testator may express his intentions by what words he pleases, and the court is so to

expound his expressions that every word may stand, if possible. The court is to pronounce according to the apparent intent of the testator, but that intent must be found in the words of the will, and is not to be collected by conjecture *dehors* the will, or as my lord chief justice expressed himself in a late case, as the question has not been asked of the testator, it is but conjecture what would have been his answer.' In *Hawley* v. *James*, 16 Wend. 143, Judge Bronson stated the rule as follows: 'The rule that the intent of the testator is to govern in the construction of wills has no necessary connection with the inquiry whether the devise or bequest is consistent with the rules of law. When we have ascertained what particular disposition the testator intended to make of his estate, then, and not before, the question arises whether the will is valid. If the disposition actually made is not inconsistent with the rules of law, the will is good, and must be carried into effect, whatever the testator may have thought about the legality of the act; and on the other hand, if the disposition actually made is contrary to law, whether it happened through design or the want of accurate information, the will is worthless, and we have no choice but to declare it void.' The case at bar is clearly within these declared principles; for here the intent was clear, that the whole estate was to go to the trustees, to be by them conveyed, and there are no operative words to create an estate in remainder. Of course, if an estate be created subject to several trusts, one of which is void, and the latter is legally separable from the others, the estate vests, unaffected by the void trust; but if the creation of the estate depends upon the execution of a void trust, then it can never come into existence.

"Counsel for both parties, in discussing the point above noticed, as well as other points in the case, have commented largely on a line of New York cases, of which *Townshend* v. *Frommer*, 125 N. Y. 446, *Mead* v. *Mitchell*, 17 N. Y. 210,[2] *Bruner* v. *Meigs*, 64 N. Y. 506, and *Moore* v. *Appleby*, 36 Hun, 368, are instances. In the opinions in some of these cases, there is followed, to some extent, the examples of former writers on uses, trusts, powers, and estates, who were wont to indulge very fully in abstruse learning, and to use language of rather an indefinite and ambiguous character, somewhat after

---

[2] 72 Am. Dec. 455.

the methods of the metaphysicians; but, while there is some apparent inconsistency in these cases, they will all, upon close examination, be found to establish the proposition, that whether there is, in a will, a direct grant of remainders, or a mere trust to convey at a future time, so that no estate is to vest until the execution of the conveyance, is to be determined by the intention of the testator expressed in his will. The case of *Townshend* v. *Frommer, supra,* is almost exactly like the case at bar, and it is proper to briefly state here the facts of that case and the conclusion of the court. In that case, Mrs. Curtis, being the owner of lands subject to a mortgage, conveyed the same to a trustee, in trust, to pay over the yearly income to herself during her life, and upon the further trust that her trustee shall 'convey said lands, and every part of them, in fee-simple,' to her children 'living at her decease, and the surviving children of such of them as may then be dead.' The mortgage was afterwards foreclosed, but certain children of Mrs. Curtis then living were not joined as parties to the foreclosure suit. The plaintiff claimed under a conveyance from the children, and the defendants under the foreclosure suit, and the question was, whether or not the children who conveyed to plaintiff had estates in the property which made them necessary parties to the foreclosure suit. The court held that the trust to convey, although invalid as one not permitted by the statute, yet, under another provision of the statutes of New York, might be held valid as a power in trust; but that it 'conferred no interest in the estate, during the grantor's life, upon any further class of intended beneficiaries; and so that they were not necessary parties to the foreclosure suit; that the extinguishment of the estate in the grantor and trustee by the foreclosure sale destroyed it as to the beneficiaries of the power, and therefore plaintiff acquired no interest under his deed.' And so in that case it was held, as we hold in the case at bar, that no estate in the land vested in the persons of the enumerated classes, because that was not the intention of the testator as expressed in the will; and the intention of the testator in the case at bar was much more pronounced and positive than in the case of *Townshend* v. *Frommer.*

"It is contended by appellants, that even though the trust to convey be void under our statute, yet it should be considered merely as a use, executed by the English statute of uses (27 Hen. VIII, chap. 10.) There is in the briefs a great deal of

discussion of the question whether certain old English statutes, including the statute of uses, are parts of the law of this state; but for the purposes of this case we do not deem it necessary to follow that discussion to any great extent, or to definitely determine the question. The only declaration in our law upon the subject is contained in section 4468 of the Political Code, which is as follows: 'The common law of England, so far as it is not repugnant to or inconsistent with the constitution of the United States, or the constitution or laws of this state, is the rule of decision in all the courts of this state.' This declaration includes only the 'common law of England,' and makes no reference whatever to any English statutes, either ancient or modern. Of course, strictly speaking, the very essence of the common law is, that it is *not* statutory law; it is the *lex non scripta*, as distinguished from the *lex scripta*, which is made by acts of Parliament. The original English colonies, which afterwards became states of the American Union, were governed, before the American Revolution, by the laws of England, both common and statutory, so far as they were applicable to their conditions; and after the separation, generally by constitutional and statutory declarations, and in a few instances by judicial construction, the acts of Parliament which had been passed before certain named periods became the common law of those original states; and in other states which were afterwards carved out of the original states, certain old English statutes, generally by express constitutional or statutory declarations, were considered part of the common law of those states. In *Norris* v. *Harris*, 15 Cal. 253, it was intimated that in American states erected over territory which was derived from countries other than England, and where neither the common nor the statutory law of England ever formerly prevailed, there is no presumption that the common law itself exists, except as expressly declared by the constitutions and statutes of such states. It was so expressly held in *Herr* v. *Johnson*, 11 Col. 393; and the current of authority seems to be that way, although in Nevada (*Hamilton* v. *Kneeland*, 1 Nev. 40; *Ex parte Blanchard*, 9 Nev. 101; *Evans* v. *Cook*, 11 Nev. 69) it was held otherwise. On this question, see *Matter of Lamphere*, 61 Mich. 108; *Commonwealth* v. *Knowlton*, 2 Mass. 534; *Sackett* v. *Sackett*, 8 Pick. 309; *Bogardus* v. *Trinity Church*, 4 Paige, 198; *Henry* v. *Bank of Salina*, 5 Hill, 532; *Levy* v. *McCartee*, 6 Pet. 110.

"In 4 Kent's Commentaries, 299 (an authority frequently cited), it is merely said that 'the English doctrine of uses and trusts, under the statute of 27 Henry VIII, and the conveyances founded thereon, have been very generally introduced into the jurisprudence of this country'; which is, of course, true; but that only means that they have been introduced in quite a large number of the states by the methods and under the circumstances above noticed. The only case in this state to which our attention has been called, in which the question was ever raised, is *Chandler* v. *Chandler*, 55 Cal. 267, in which it was passed as unnecessary to be decided. We have noticed the question thus briefly, and a few of the authorities bearing on it, because it is an interesting question; and as it is not necessary to pass upon the question definitely here, we do not do so, so as not to embarrass the decisions of future cases, where it might be of great importance. The meaning of the phrase, that the statute of uses 'executes' a use or trust is, simply, in substance, that, under that statute, if A grants or devises lands to B for the use of, or in trust for, C, C immediately takes the legal title as well as the beneficial use, and B takes nothing. (2 Perry on Trusts, par. 298.) Now, whatever may be considered as constituting the common law as adopted by section 4468 of the Political Code, still it prevails only 'so far as it is not repugnant to or inconsistent with . . . the constitution or laws of this state'; and section 4 of the same code provides as follows: 'The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this code. The code establishes the law of this state respecting the subjects to which it relates.' Title IV of part II of the Civil Code 'establishes the law of this state respecting' uses and trusts, and there is no provision in it similar to that of the English statute of uses, which vests the legal title in the *cestui que trust*. There was at one time what was then section 848 included in said title IV, which reads as follows: 'Every person who, by virtue of any transfer or devise, is entitled to the actual possession of real property, and the receipts of the rents and profits thereof, is to be deemed to have a *legal estate* therein, of the same quality and duration, and subject to the same conditions, as is the beneficial interest'; but that section was expressly repealed on March 20, 1874, as well as the sections following it, which were designated as 849, 850, and 851, and referred to the same subject.

Moreover, section 863 in the said title is as follows: 'Except as hereinafter otherwise provided, every express trust in real property, valid as such in its creation, vests the *whole estate* in the trustees, subject only to the execution of the trust. The beneficiaries take *no estate* or interest in the property, but may enforce the performance of the trust.' It is clear, therefore, that, under our statute of uses, no legal estate vests in the beneficiary. Indeed, the English statute of uses is repugnant to our whole system of conveyances, which is simple in form, and inconsistent with the purposes of our system of registry. (*Gorham* v. *Daniels,* 23 Vt. 609.) Moreover, the judicial decisions in this state have not, to our knowledge, applied here the English statute of uses, — at least, we have not been referred to any decisions here which have done so; on the contrary, the decisions here have always gone upon the theory that the only remedy of the holder of a use or an equitable right in trust was a decree in equity for a conveyance. (*Estrada* v. *Murphy,* 19 Cal. 249; *Emeric* v. *Penniman,* 26 Cal. 119; *O'Connell* v. *Dougherty,* 32 Cal. 458; *Greer* v. *Blanchar,* 40 Cal. 197.)

"In *Greer* v. *Blanchar, supra,* the court say: 'The property in controversy is alleged to have been conveyed in the year 1853 to a trustee, "in trust, for the use and benefit of Harriet M. Risley and S. Risley." By means of that conveyance the *equitable estate* in the premises was vested in the Risleys as joint-tenants'; and this is merely a declaration of the principle which runs through all our decisions: that in such a case the equitable estate, *only,* vests in the beneficiary; while under the English statute of uses, in such a case, the legal title would have so vested. Again, the statute of uses executed only those trusts which were passive, — that is, where there was nothing for the trustee to do, as where there was a conveyance to him, in terms, for the use of another, or where he stood seised to the use of another, or where he was to permit or suffer something, — but it did not execute a special or active trust where there was some duty to be performed by the trustee; and a trust to convey was an active trust, and therefore not executed. In 1 Perry on Trusts, sec. 309, the principle is correctly stated as follows: 'Therefore, if any agency, duty, or power be imposed on the trustee, as by a limitation to a trustee and his heirs to pay the rents, or *to convey the estate,* . . . in all these cases, and in other like cases, the operation of the statute is

excluded, and the trusts or uses remain mere equitable estates.'
In 1 Lewin on Trusts, 210, the rule is also laid down as follows:
'Special trusts are not within the purview of the act of Henry
VIII; and therefore, if any agency be imposed on a trustee, as
by limitation to A and his heirs, upon trust, to *pay* rents or
*to convey the estate*, . . . in all these cases, as the trust is of a
special character, the operation of the statute of uses is effec-
tually excluded.' Moreover, under the English statute of uses
only a valid use or trust could be executed; and, as we have
seen, in this state a trust to convey is invalid. Therefore,
under any view of the law, the trust in the case at bar was not
executed. ·

"The contention, that although the trust to convey be void,
it may be held good as a 'power in trust to convey,' cannot be
maintained. The New York statutes, which are very similar
to ours, in enumerating those trusts as to real property which
alone are valid, expressly provide for a power in trust to con-
vey; but there is no such provision in our statutes, although
we had such a one for a short time. It was section 860, in the
same title IV of the Civil Code, which declares what trusts are
and what are not valid, and was as follows: 'Where an express
provision as to real property is created for any purpose not
enumerated in the preceding section, such trust vests no estate
in the trustees; but the trust, if directing or authorizing the
performance of any act which may be lawfully performed
under a power, is valid as a power in trust, subject to the pro-
visions in relation to such powers contained in title V of this ·
part.' It was followed by two other sections on the subject, but
they were all three repealed in 1874, and in the same year the
entire title V, which was on the subject of 'powers,' and which
contained over sixty sections on that subject, and to which
said section 860 above quoted refers, was also wholly repealed.
With respect to the meaning and operation of title IV, which
declares what trusts in relation to real property may and what
may not be created, there is no distinction between a trust to
convey and a power in trust to convey. A mere naked power
can be exercised or not, at the will of the holder; but if the
exercise of it be imperative, it is a *trust*. In Sugden on Powers,
the author, having said that it is the very nature of a power
to be 'left to the free will and election of the party to execute
it or not, for which reason equity will not say he shall execute
it,' proceeds as follows: 'But in laying down this broad rule

we must be careful to distinguish between mere powers and powers in the nature of trusts. The distinction between a power and a trust is marked and obvious. "Powers," as Lord Chief Justice Wilmot has said, "are never imperative." They leave acts to be done at the will of the party to whom they are given. Trusts are always imperative, and are obligatory upon the conscience of the party intrusted. But sometimes trusts and powers are blended; a man may be intrusted with a trust to be effective by the *execution* of a power given to him, which is in that case imperative; and if he refuses to execute it, or die without having executed it, equity, on the general rule that the trust is in the land, will carry the trust into execution.' (2 Sugden on Powers, 158.) Upon the same subject in Perry on Trusts, the author, having said that 'mere powers are purely discretionary with the donee,' says as follows: 'It is different with powers coupled with a trust, or powers which imply a trust. . . . There are mere powers and mere trusts. There are also powers which the party to whom they are given is intrusted with and required to execute. Courts consider this last kind of power to partake so much of the character of a trust to be executed, that they will not allow it to fail by the failure of the donee to execute it, but will execute it in the place of the donee. Lord Hardwicke observed that such powers ought rather to be called *trusts* than powers. In all cases, these powers or trusts must be construed according to the intention of the parties, to be gathered from the whole instrument.' (1 Perry on Trusts, par. 248.) It is clear, therefore, that a 'power in trust to convey' is a *trust* to convey, within the meaning of said article IV, and that, not being within any category of valid trusts within this article, it is by said article forbidden. Under this view we do not think it necessary to notice any of the other views taken of this subject by either respondents or appellants.

"A good deal has been said by counsel about the difference—or, as appellants contend, the want of much difference—between the consequences flowing from a direct devise, and those flowing from a trust to convey at a distant period to persons of certain classes who might then be in existence. The quantity of that difference is not material to the determination of the question here involved. The question to be determined is, What did the testator do? Did he devise vested estates in remainder? or did he devise the whole fee to

the trustees upon trusts to convey after the death of all of his children? If, however, it were important to consider the consequences, it is quite plain that those flowing from one of those acts are very different from those which would flow from the other. If, in the case at bar, the testator had made a direct devise in remainder to the persons of the classes named in the will, those of the latter who were alive at the testator's death would have immediately taken vested estates; the interest of each would have been a property and ownership in the land, with all the rights, powers, and advantages which legally belong to such an interest. If there had been a direct devise to the trustees for the lives of the testator's children, with remainders to the said classes, as there would have been persons *in esse* of said classes to take were the life estate to end at the present time, such persons would have taken vested remainders; and 'such a remainder confers a present fixed right to the future enjoyment, which rises to the dignity of an estate in the land, and invests the remainderman with a portion of the seisin, property, or ownership.' (20 Am. & Eng. Ency. of Law, 839, 840, and cases cited.) 'Such a remainder may be devised, assigned, and *limited over*.' (Id., notes to p. 840, and cases cited.) Such a remainderman has a *status* which gives him many rights and remedies; he is a necessary party to suits to foreclose, for partition, etc., and may himself maintain suits about the land, as to recover damages for waste, etc. It is needless to pursue further the incidents of such an estate; but the trust to convey contained in the will vests no estate whatever in the persons of the classes named; they have no 'portion of the seisin, property, or ownership.' It merely gives to persons of certain named classes, who may happen to be alive at a remote, uncertain time (none of whom need be in existence at the present time), a contingent right to compel the execution of the trust to convey. They are simply in the category of those mentioned in section 863 of the Civil Code, where it declares that 'the beneficiaries take no estate or interest in the property, but may enforce the performance of the trust.'

"There are other considerations presented by counsel of both sides, bearing upon the question of the validity or invalidity of the trust clause of the will here under discussion, but they are of less consequence than those heretofore noticed, and are mostly covered by the views already expressed; and owing

to the great length to which this opinion has already gone, they must be passed without special notice. It may be remarked, generally, that while a man's power to say to whom his land shall go *when he dies* is a proper and valuable property right, still there is no rule of law or public policy which calls upon a court to be diligent to discover some way to make good a man's forbidden scheme to determine who shall have his property fifty years after his death. It is true that our code permits a suspension of the power of alienation during lives in being, and that where, as in the case at bar, the lives selected are those of very young persons, suspension may be, in the natural course of events, for half a century; but where the attempt to do this has not been lawfully accomplished. there is no reason why a court should condone the unlawfulness of the attempt, for the *general* policy of the law is against the tying up of property and keeping it for long periods out of the current of alienation and apart from ordinary business purposes. And then the rights of the legal heirs, to whom the law gives property in case of intestacy, are entitled to some consideration. In *Estate of Walkerly*, 108 Cal. 656,[3] this court said: 'The intestacy of the testator as to the Walkerly Block is the harsh result which must follow this void trust, and the property will descend to his heirs. It is true that such was not the testator's intent, but the testator must do more than merely evince an intention to disinherit before the heirs' right of succession can be cut off. *He must make a valid disposition of his property.* (*Harbergham* v. *Vincent*, 2 Ves. Jr. 204; *Hawley* v. *James*, 16 Wend. 150; *Haynes* v. *Sherman*, 117 N. Y. 433.)' Our conclusion as to the trusts to convey, sought to be created by the fifteenth clause of the will of the decedent, is the same as that reached by the learned judge of the court below; namely, that they are void.

"We also agree with the learned judge of the court below that the invalid trust to convey carries with it the otherwise valid trust for the lives of the testator's children, and that therefore the whole trust failed. Of course, the general rule is well settled, that where there are valid and invalid clauses in a will, the question whether the valid clauses can stand depends upon whether or not the invalid ones are so interwoven with them that they cannot be eliminated without

---

[3] 49 Am. St. Rep. 97, and note.

interfering with and changing the main scheme of the testator. In *Darling* v. *Rogers*, 22 Wend. 495, Senator Verplanck correctly stated the rule as follows:  'When a will is good in part and bad in part, the part otherwise valid is void if it works such a distribution of the estate as, from the whole testament taken together, was evidently never the design of the testator. Otherwise when a good part is so far independent that it would have stood had the testator been aware of the invalidity of the rest.' And in the celebrated Tilden will case (*Tilden* v. *Green*, 130 N. Y. 50[4]), the court say: 'The appellants invoke the aid of the principle, that where several trusts are created by will, which are independent of each other, and each complete in itself, some of which are lawful and others unlawful, and which may be separated from each other, the illegal trust may be cut off and the legal one permitted to stand. This rule is of frequent application in the construction of wills, but it can only be applied in aid and assistance of the manifest intent of the testator, and never where it would lead to a result contrary to the purposes of the will, or work injustice among the beneficiaries, *or defeat the testator's scheme for the disposal of his property.*' In the case at bar, it is quite clear from the will that the trust as to the income during the lives of the testator's children, and the trust to convey the *corpus* of the property after their death to certain enumerated classes of persons, were inseparable parts of one entire scheme; and there is no reasonable ground for the supposition that if he had known that the latter trust was void, he would have allowed the former to stand. Upon such a supposition we would have to hold that he would have been willing to merely devise an estate to the trustees during the lives of his children, the income to be divided equally between them, and allow the entire reversion undisposed of by him to go to the heirs at law. But, clearly, that was *not* his intention. His manifest purpose was, that none of his property should go either to his children, or to any other persons as heirs at law. He intended, through the devise to the trustees and anticipated conveyance by them, — for, of course, he must be deemed to have been ignorant of the illegality of the trust to convey, and to have supposed that it would be performed, — to dispose of the temporary income to his children during their lives, and ultimately

---

[4] 27 Am. St. Rep. 487, and note.

the entire *corpus* of the property, leaving no part of the fee undisposed of; and his division of the income was evidently based upon the consideration of the persons who would or would not ultimately get the *corpus* of the property. But the mere creation of an estate in the trustees for the lives of the children, for the benefit of the latter as beneficiaries of the income, leaving the reversion to go to the heirs at law, would have been inconsistent with the most determined purpose of the testator. In such event the three children, being themselves the heirs at law, and having also the income during their lives, and there being no remaindermen to complain of or interfere with any of their acts in the premises, the title would be in a somewhat anomalous condition. It is not necessary to inquire what power of alienation of the fee the children would have under such circumstances if the trustees insisted upon holding on under the income trust, or whether the children, having both the inheritance and, substantially, the beneficial use, could compel a termination of the trust. They could certainly, with the consent of the trustees, have the trust discharged (Civ. Code, sec. 2282); in which event they would have the entire estate in fee-simple, with present possession of the property. Of course, if the trust to convey were valid, there would be a duty upon the trustees to hold the title and possession until the death of all the children, and then convey it to persons of the named classes; but the trust to convey being void, why should the trustees be required to hold against the present owners of the entire property? And who else would there be with a legal right to complain of the termination of the trust? And thus the children would have, what the testator expressly declared in his will they should *not* have, present vested estates in fee in the whole property. Moreover, the testator expressly and emphatically declared that no child of his son Charles should have any part of his property, and that Charles himself should have nothing except one third of the income during his life; but, under the construction contended for by appellants, Charles would, under one view, have one third of the *corpus* of the property, and might, upon the happening of certain events, have it all, and, under another view, his children would take contrary to the will of the testator; and as the income given to Charles would be very large, it may well be supposed that it was given him so that he might be spurred to save

something for his children, and that the testator would not have given him so much if he had known that his children might inherit. For these reasons, as well as for others that could easily be suggested, we hold that the invalidity of the trust to convey destroys the whole scheme of the will, and carries with it the trust for the lives of the children."

The foregoing opinion disposes of what may be termed the technical legal phases of the case, and we pass to the consideration of questions which largely have presented themselves upon the last arguments, and which were called forth by reason of the views of the various justices of this court promulgated in the former decision.

The will provides: "All the rest, residue, and remainder of my estate, property, and effects, real, personal, and mixed, whatsoever, and wheresoever situated, I give, devise, and bequeath unto my trustees hereinafter named, and to the survivors of them, and to their successors in office, in trust, for the following uses and purposes; that is to say, to have and to hold the same, in trust, during the lives of my daughters, Theresa A. Oelrichs and Virginia Fair, and of my son, Charles L. Fair, and during the life of the survivor of them, and upon the death of said survivor to transfer and convey to the children or descendants of my said daughter Theresa A. Oelrichs, the one fourth of said trust property and estate," etc. We are now directly confronted with a question of construction; namely, Does this provision of the will place in the trustees a trust to transfer and convey this estate to certain of Fair's kindred? or, upon the contrary, may it be construed as a direct devise to those kindred? Simplifying the proposition, yet leaving it exactly the same in principle, aside from the question of perpetuities, let us assume the provision to be, "All the rest and residue of my estate and property I give, devise, and bequeath unto my trustees, in trust, for the following uses and purposes; that is to say, to have and to hold, in trust, for six months, applying the rents and profits thereof to the care of my children, and upon the expiration of the six months to transfer and convey said property and estate to my kindred" (naming them). Does such a provision create a trust in the trustees to *transfer and convey* the estate? Thus presented, this question does not seem to be a big one. Yet a wonderful amount of argument, of learning, and of law by most eminent counsel has been advanced to aid the court in

giving the true answer. In construing this language of the will, it must be kept in mind, that the court is not allowed to force the construction of a sentence, or even a word, in order that a particular result may be reached; and this is the rule, even though such construction be absolutely necessary to save the document from complete condemnation.

In the Walkerly case, *supra*, it is said: " Where the language of the provisions of the will is plain and unambiguous, the courts are not permitted to wrest it from its natural import in order to save it from condemnation. . . . It may be said of all wills, that the testator's intent is to make a valid disposition of his property. . . . But a court is not therefore authorized to modify or vary the plain language of the testator, and thus create a new and valid will for him, even if it were certain that the testator would have adopted the interpretation of the court, had he known his own attempt was invalid." Now, this property, under the illustration, was devised to the trustees, in trust, for certain uses and purposes. What are these uses and purposes? They are: 1. To hold the property for six months, and apply the income to the care of the children; 2. At the period of time fixed, to transfer and convey the property to certain kindred. It is conceded that the trustees took the property in trust for certain uses and purposes; yet the trust to transfer and convey appears as plain and palpable, from the language used, as the trust to hold the property for six months, and apply the income to the care of the children. If there be a trust created to do one of these things, there is a trust created to do the other. The testator's intentions must be determined from the words he used. He said he desired the trustees to hold the property in trust for a fixed period, and then transfer and convey it. He certainly intended by these words that they should make a deed of conveyance of the property. And if he intended that they should make a deed of the property, he only could have intended that they should by that deed pass the fee of the property. The words used, indicating a conveyance, are words of simple, ordinary legal import, and are the words always used in an instrument where a party desires property to pass by deed. A layman would not hesitate a moment in the declaration that Fair intended by this language that the trustees should pass title to the property by deed. It is only the astute lawyer who can see any other intention. While Fair's intention as to the creation of a trust

in the trustees to convey stands out so that all may see, we find nothing in the instrument, anywhere, showing a contrary intention. Indeed, when the pleadings in this case were prepared and filed by the trustees, we find a verified allegation in those pleadings to the effect that these trustees were the owners in fee-simple absolute of this property, in trust, etc.

Stress is laid by appellants upon the effect of the words, "to have and to hold, in trust, during the lives of," as fixing the estate of the trustees; yet it is plain, the simple purpose and effect of that clause is only to fix the *time* when the trustees shall make the conveyance, — shall transfer and convey the estate. These words were not used to fix the *quantum* of the estate of the trustees, but to fix the day when the fee should be conveyed to the beneficiaries. If the estate were devised to the trustees, in trust, to have and to hold for six months, and then to transfer and convey to the beneficiaries, would the estate in the trustees be an estate simply for years? We hold not; but, on the contrary, are assured the words, " to have and to hold, in trust, for six months," would be used for the purpose, and should have the effect alone of marking the time when the property should be transferred and conveyed; and would in no degree establish the *quantum* of estate devised by the instrument to the trustees in trust. These words not having any effect upon the *quantum* of the estate, there are no other words in the instrument having any tendency to diminish that *quantum*. It seems, under these circumstances, that if a complete and perfect fee ever could vest in a person, it has vested in these trustees. It follows from these views that the contention of appellants, to the effect that the trustees took only an estate for the lives of Fair's children, or an estate for life with an incidental fee which allowed them to sell and transfer the property during that period, cannot be maintained.

Another view of this contention, closely allied to the one just considered, is found in the claim that the will creates an estate for life in the trustees, with a direct devise to Fair's kindred. And this claim is based upon the concession (for the purposes of the case, only) that Fair intended to create a trust to convey, but the means or mode provided by him for vesting the estate being illegal, therefore, in order to carry out his general intent to vest the property in certain of his kindred, a legal means and mode will be substituted by the court. In other words,

CXXXII. Cal.—25

the contention is, that, notwithstanding Fair's intention to create a trust to transfer and convey his property may appear upon the face of the will as plain as a blazing fire in the darkness of night; notwithstanding Fair may have said in his will, " I hereby intend in and by this will to create a trust in the trustees to transfer and convey my property to my beneficiaries,"—notwithstanding all this, the court will give no concern to that expressed intention, the trust being void; but in order that these particular beneficiaries may secure the property, will hold that it passes to them by direct devise. Courts will look askance at such a proposition, for it is startling in the extreme. In the first place, we do not find any general or ultimate intent upon the face of the document indicating that these beneficiaries shall take this property by hook or by crook. The only intent we find is an intent that they shall take it in a certain specified way; namely, by way of a trust to transfer and convey. Can counsel or court say that, from the face of this instrument, there is a plain intent that these beneficiaries shall have this property, regardless of the way provided by the testator for them to take it,—indeed, regardless of everything? Upon the contrary, it seems that they were to get it only by way of the route pointed out in the will. If that route be blotted out, how may they get it at all? Who can say from the words of the will but that the testator intended that they should get it by way of the trust, or not get it at all? This court is not wise enough to say that Fair did not know he was creating a trust to transfer and convey when he made his will. In *Estate of Young*, 123 Cal. 343, it is said: " One of these rules firmly established and never departed from, nor even criticised, is, that the expressed intent will not be varied under the guise of correction because the testator misapprehended its legal effect. The testator is presumed to know the law. If the legal effect of his expressed intent is intestacy, it will be presumed that he designed that result. The inquiry will not go to the secret workings of the mind of the testator. It is not, What did he mean? but it is, What do his words mean? "

Let it be conceded that a general intent may be found in this will, indicating that these beneficiaries should have the property, still the only mode provided by the testator for them to get it is illegal, prohibited by the law, and this court has no power to provide a legal mode. In attempting to vest an estate, if the only mode prescribed for the purpose by the tes-

tator is illegal, courts cannot close their eyes to that mode, and substitute in lieu thereof a legal mode. A valid power in trust, coupled with a statute of uses, might do it; but without the power and the use, it cannot be done. If the mode provided by the testator was legal, but defective in substantials, the court could not create a new mode. Then, when the mode created is illegal, void, amounts to nothing, how may the court create a new and legal mode? The law says to Senator Fair: "You shall not create a trust to convey your property." Fair says: "I will create a trust to convey my property." The court says: "The trust you created to convey your property is void, because prohibited by law; but your wishes as to the disposition of your property will be carried out, through the medium of a direct devise, exactly the same as though the trust you created was entirely valid; and the words you used to create the void trust will be held to create a valid direct devise." This construction of the instrument renders the law forbidding trusts of this character absolutely nugatory, and demands the exercise of an accommodating spirit upon the part of the court, which the law forbids. Under the law of this state, a devise to A in fee, in trust, to convey to B, cannot be the equivalent, by any possible rules of construction, of a direct devise to B. That is the substance of this contention; but to so declare would shock the statute forbidding the creation of trusts of the character here involved. In this illustration, with equal propriety it may be said that there is a general intent that B should have the property; yet, by no judicial construction could he ever get it. It is not the right of the court, by construction, or in any other way, to evade a rule of law in order that some particular result may be reached. The court may only declare the law as it finds it, whatever the result of that declaration may be.

Some importance is attached by appellants to section 864 of the Civil Code. That section provides: "Notwithstanding anything contained in the last section, the author of a trust may, in its creation, *prescribe* to whom the real property to which the trust relates shall belong in the event of the failure or termination of the trust, and may transfer or devise such property subject to the execution of the trust." The facts of this case do not call for an analysis in detail of this section of the code. In the creation of the trust here involved, the trustor has made no attempt to *prescribe* to whom the property shall

belong in the event of the failure or termination of the trust. He has not said, as he may have said under this section, "If the trust I have hereby created in the trustees to transfer and convey my property is not a valid trust, and for that reason shall fail, then I direct that this property shall pass," etc. A provision of that character in this will would bring the case directly within the section. But the testator wholly fails to insert the provision. He makes no attempt to do it. Again, the section cannot be construed to mean that the trust provided for by the instrument being void, the language creating it will be treated and deemed the prescription mentioned in the section, and therefore the property will pass exactly as it would have done if the trust had been valid. Certainly, this construction of the section was never contemplated by the lawmakers, for it would be holding that every void trust to convey could be transformed into a valid prescription.

If you eliminate the words "transfer and convey" from the will, then the beneficiaries named would not take the estate at all, for the heirs of Fair would be entitled to inherit it. Hence the interest of the beneficiaries in the estate can only come to them through the words "transfer and convey"; and if the beneficiaries are to take the fee, and take it only through the medium of those words, the trustees must have the fee vested in them, in order that they may transfer and convey it. The will demands that they shall transfer and convey to the beneficiaries,—that is, make a conveyance of the property to them, —that is, vest the title of the property in them by a conveyance. To hold otherwise—to give the words "transfer and convey" some other meaning—is to wrest them from their usual and ordinary import, and give them a forced meaning wholly unjustified by anything contained in the instrument. The favor of the law in the direction of supporting testacy cannot go to these lengths. If the document under consideration had been a deed, and not a will, would this court hold that these named kindred would take the estate by direct grant, the trust being void? We apprehend not. Yet the intent in both cases being the same, the rules of law as to the construction of deeds and wills stand the same. We cannot imagine that an estate created by will would be valid, while the same estate created by deed would be invalid. The rights of devisees are no more sacred, and are entitled to no more protection, than are the rights of heirs.

The trustees had the power under Fair's will to convey away the fee of this property. This power was granted to them in express words. However, it is said by appellants that *this fee* was of a limited character,—a fee simply feeding that portion of the trust which authorized the trustees to sell. In another form the contention may be stated to be, that the trustees had the fee vested in them if they decided to sell the property, but had no fee vested in them if they decided to hold the property. It may well be said that such a fee is of a nondescript character. The fact, standing alone, that the trustees were authorized to sell the property and convey a fee, points directly and unerringly to the fact that the fee was cast in them. For, if they had no fee, they could convey no fee. And this power vested in the trustees to convey the fee points with equal certainty to the fact that when the testator said, "I devise my estate to my trustees, in trust, to hold for the lives of my children, vesting in the trustees the power to convey the fee during that period of time, and if they do not convey during that period, then they shall transfer and convey my property to certain of my kindred," — he meant, and could only mean, by every rule of construction, that the trustees were vested with the fee of his property, which fee they could convey to third parties during the lives of his children; and if not so conveyed, then they should convey it to these kindred.

The court concludes that the fee to Fair's property was cast in the trustees, in trust, to transfer and convey to certain of his kindred; that his intention to so place the fee stands out plainly from the face of the entire will; that no contrary intention whatever appears therefrom; and that the will must fall by reason of this prohibited trust. We are more satisfied with this result, when it is considered that a contrary conclusion would perpetuate a trust of this vast estate, probably for a period of fifty years or more, and also result in a disinheritance of Fair's children. Notwithstanding a man has a right, under the law, to make a will, still the law is not kindly disposed to either of these things, and if this were a closely balanced case, these threatened results would furnish reasons for a decision the other way.

For the foregoing reasons the decree is affirmed.

Van Dyke, J., and McFarland, J., concurred.

HENSHAW, J., concurring.—Upon the former hearing of this case I gave my assent to the conclusion reached by Mr. Justice Harrison, that an equitable remainder in the estate of Fair was devised to the persons to whom the trustees were directed to convey upon the death of his last surviving child. That the will created a trust to convey, I never entertained any doubt. Not only is the language apt and well chosen for that purpose, not only have its phrases been selected and employed with sedulous care, not only was it the opinion of the astute attorneys who prepared the pleadings of appellants that a fee was devised by the will to the trustees, but, in addition to all this, the question propounded upon the last argument of the case has remained without satisfactory answer, and is to my mind unanswerable: "If this language does not create a trust to convey, what different words would you or could you employ to create such a trust?" In the light of the arguments, oral and printed, upon the last hearing, and after a more detailed and exhaustive consideration of the authorities, I am convinced that in a natural desire to uphold the last will of the deceased, due weight was not given to the clear and explicit intent of the testator. While always of the opinion that a trust to convey was clearly meant and created in the will, and that such a trust, under the laws of this state, is absolutely void, it then seemed to me that the provisions of the will could be sustained in accordance with the doctrine of the cases holding that under such a trust an equitable interest or estate or remainder passes to the beneficiaries. The error of this position came from a failure to give due recognition to the fact emphasized and demonstrated upon the last argument, that only in those courts where a trust to convey is valid, as in England, or in those like New York, where its purpose is effectuated by an enabling statute, as a power in trust, has this rule or doctrine ever been declared. It is because the trust is valid, and that consequently a legal estate vests in the trustees, that an equitable interest or estate, eo instanti, following the legal, vests in or passes to the beneficiaries. But where, as in this state, the trust is void, and where, consequently, no legal estate can ever vest in the trustees, there can be no estate in law to support the equity. The whole trust is void. The legislature has prohibited a trust to convey. It has declared such a trust to be void. It has forbidden the separation of the equitable from the legal interest by this mode,

and a court can no more say that the equitable estate, under such a void trust, passes to the beneficiaries, than it can say that the legal estate passes to the trustees. Such, I think, is the unanswerable argument in every jurisdiction where, as with us, a trust to convey is prohibited and declared void by express law. For if it can be said that equitable estates may vest in the beneficiaries notwithstanding they owe their existence to trusts prohibited by law, and void, it can only mean that the legislative inhibition against certain trusts is made utterly vain and nugatory. If the trust violates the rule against restraints on alienation, for example, as in *Estate of Walkerly*, 108 Cal. 656,[4] the solution then would be, not, as there declared, that, the trust being void, all estates, legal and equitable, attempted to be created were likewise void, but, rather, that, notwithstanding the trust is void, it is plain what the testator intended, and it will be held that equitable estates passed to the beneficiaries, by reason of which they will be permitted to draw to themselves the legal title. Such, of course, cannot be the law.

To uphold the terms of the will, as creating a power in trust, presents equally formidable obstacles. First, because the testator's plain and obvious intent, it seems to me, was to create, not a power, but an explicit trust; but if that point be waived, still the power is a power in trust, and it either must be held that the repeal of powers in trust by the legislature of this state abolished any such power if it did exist, or else that, notwithstanding the declaration of section 847 of the Civil Code, uses and trusts in relation to real property are those only which are specified in this title; that powers in trust, as known to the common law, with all their labyrinthal difficulties and sinuosities, are in full force and effect with us; and that while the legislature has at great pains simplified trusts and estates, it has designedly and intentionally perpetuated the most intricate and difficult subject of common law and equity cognizance, and, through powers in trust, has preserved all the difficulties which it attempted to eliminate in dealing with trusts.

It is unquestionable that it was because powers at common law were abstruse and full of uncertainty that the New York codifiers recommended the abolition of all not expressly de-

---

[4] 49 Am. St. Rep. 97, and note.

clared and reserved. (*Jennings* v. *Conboy*, 73 N. Y. 233.) The design was to simplify the cumbersome system which had grown up at common law. Our own code commission followed the example of New York, and adopted bodily their proposed scheme. As part of this scheme were the following sections: —

"Where an express trust in relation to real property is created for any purpose not enumerated in the preceding sections, such trust vests no estate in the trustees; but the trust, if directing or authorizing the performance of any act which may be lawfully performed under a power, is valid as a power in trust, subject to the provisions in relation to such powers contained in title V of this part." (Civ. Code, sec. 860.)

"Nothing in this title prevents the creation of a power in trust for any of the purposes for which an express trust may be created." (Civ. Code, sec. 861.)

"In every case where a trust is valid as a power in trust, the real property to which the trust relates remains in, or passes by succession to, the persons otherwise entitled, subject to the execution of the trust as a power in trust." (Civ. Code, sec. 862.)

They were properly placed under the chapter on uses and trusts, which begins with the declaration that "uses and trusts in relation to real property are those only which are specified in this chapter." For powers in trust are trusts. As Sugden says, "Powers, as we have seen, are mere declarations of trust" (Sugden on Powers, 119); and Lord Hardwicke declared that "such powers [where any person other than the holder has an interest in its execution] ought rather to be called trusts than powers." (1 Perry on Trusts, sec. 248.) These sections were repealed with other sections, and, recommending their repeal, our learned codifiers reported to the legislature as follows: "We have proposed to strike out the whole chapter on powers, as wholly unsuited both to the wants and habits of the people, retaining one or two sections by amendment of other portions of the code in places where the provisions of those sections properly belong."

What, then, was the effect of these repeals? Can it be said that they meant the revivification of the abstruse common-law system? Can it be fairly argued that that incomprehensible scheme was better suited to the wants and habits of our people than the simpler one taken from New York, and by us afterward abolished? And if this was in the mind of the revisers

and legislature, and if in their contemplation the common-law system was revived by these repeals, why, in expunging those sections, were they so careful to preserve, and to report their preservation of, certain other necessary powers? The re-enactment of these carefully preserved powers was unnecessary, because they were existent common-law powers. Can any other conclusion logically be reached than that the repeal meant, not the restoration of common-law powers, but a further simplification and advance over even the New York system, by the abolition of many of the powers which that state had preserved, and the perpetuation of only such as were considered suitable to the simpler wants and habits of the people of this state.

But if it be conceded that common-law powers in trust do exist in this state, still another difficulty confronts us. In England there would not be, and never has been, any occasion to resort to a power in trust to save a will like this, for the trust to convey would be valid and operative as a legal, active trust. The English courts uniformly and unhesitatingly have upheld such wills as creating valid trusts. What those courts might do if their law declared such trusts illegal,—whether they would convert the trust into a power in trust, and thus uphold it,—is a question that, as it has never been asked of them, it would be mere speculation to declare what their answer might be. As the necessity never arose at common law for declaring that such language created a power in trust, there is no common-law decision to act as guide. And this was appreciated in New York, where such trusts, as here, are admittedly void, and are saved only by force of their enabling statute,— a statute which we have not, and which effectuates the void trust under an express grant of power.

That the void trust may still be treated as valid to the extent that the testator must be held to have prescribed the persons or class to whom the property shall go upon the failure or termination of the trust (Civ. Code, sec. 864), is to my mind also an untenable proposition. There is never, or seldom, any difficulty in determining to whom or in whom the testator or settlor means that his trust property shall descend or vest upon the termination of the trust; but it does not follow from this, that, because in indicating this intent he has prescribed an unlawful means for its accomplishment, the result will be assured without regard to the mode. In the case of trusts that violate the rule of restraints on alienation, there is

never any doubt to whom the testator meant that the remainder or reversion should go; but in such cases no court has ever selected the designated beneficiaries, and declared that, notwithstanding the fact that their sole claim to title is through a void trust, nevertheless the testator has sufficiently indicated that upon the failure of the trust the trust property is to go to them, and the trust having failed, they shall take at once. There was no difficulty in the case of *Estate of Walkerly, supra*, in determining to whom the testator meant that the land should go, but the thought was never entertained that after failure of the trust these persons should still be regarded, within the testator's intent as prescribed and designated by him, to take in the event of the failure of the trust. There, as here, they were to take in conformity with the terms of the trust, or they could not take at all. So that if it be considered in this case that there was an attempt to prescribe the class, it was an attempt either by a void trust or an unauthorized power in trust, and if the mode be invalid, the heirs may not be disturbed in their rights. In *Estate of Walkerly* it is said: "A testator must do more than merely evince an intention to disinherit, before the heir's right of succession can be cut off. He must make a valid disposition of his property." We cannot in this case, more than in any other, substitute a valid method for the invalid one so plainly designated.

For reasons amplified in the preceding opinions, it seems apparent that the failure of the trust to convey defeats the testator's trust scheme. It leaves the whole beneficial interest and the whole reversion in his children living at the time of his death,—a result essentially and radically at variance with that which he sought to accomplish. The consequence, then, in these particulars, is the same as though he had died intestate. The property will descend to his heirs at law, as provided by the rules of succession in this state, so that those who are the immediate and direct offspring of his blood will succeed by inheritance.

For these reasons I concur in the judgment.

TEMPLE, J., dissenting.—I dissent.

Convinced that powers have not been prohibited in this state, but that the right to create them is unlimited, I am not able to read the will as my associates do.

In the first place, I see no force in the proposition that we

must first construe the will as though trusts to convey were not prohibited, and then enforce the prohibition ruthlessly. All contracts, all conveyances, and other instruments in writing, are to be construed with reference to the laws in force where they were made, and with the idea constantly in mind that they were made in view of such laws and to be enforced under them. If we fail to do this, we do not place ourselves in the position of the contracting parties, and could not expect to understand the language found. They are presumed to know the law and to have ordered their affairs with reference to it.

There is no reason why this universal requirement to presume that parties contract in view of the law should be relaxed as to wills, unless we seek for a pretext to avoid them. If there is any difference, the reason for applying the rule to the construction of wills is more cogent. They are generally more deliberately prepared, and are to be executed by others than the persons who made them, and usually there are those who would gladly defeat their execution. The testator can rely only upon positive law for its execution.

I think, then, since a trust to convey cannot be created in this state, and a power in trust for that purpose is perfectly valid, that the obvious intent of the testator, as shown by the clear language of the will, was to convey to his trustees a life estate only, and that the direction to his trustees, " upon the death of such survivor to transfer and convey," was intended as a power in trust. The language is certainly as appropriate and apt for the creation of a power as for a direction to execute a trust. If the eminent counsel for respondents could believe that powers can be created under our laws, I cannot doubt that they would have so construed it. This proposition once admitted, in my opinion the language of the will cannot be understood in any other way.

The will having been probated, all presumptions are in favor of testacy, and against intestacy. The presumptions in favor of the heirs then cease. The *duty* of the courts, then, is, to so construe the will, if in reason it can be, so as to prevent intestacy, total or partial. Keeping in view, therefore, these propositions,—to wit, that the testator knew that a trust to convey cannot be created in this state, and that a power in trust can be, and also that an estate in trust cannot be created for a period unmeasured by lives in being,—let us read the will. It is, in

effect: "I give my estate to trustees, in *trust*, for the following uses and purposes; that is to say: to have and to hold the same, *in trust, during the lives* of my children and of the survivor of them, *and upon* the death of such survivor to transfer and convey," etc. "*In trust*, further, *during the lives* of my children and of the survivor, to manage and control the said trust property and estate."

Here it is expressly declared that the purpose of the trust is, that his trustees shall hold the estate during the mentioned lives, and during such lives, and only for that period, the trustees are expressly authorized to manage and control, to collect rents, etc. There are no further duties as trustees, and no further authority, save to transfer and convey *at* the termination of the trust. This authority has all the attributes of a power, although it might also have been appropriate as a direction to trustees, had not such trusts been prohibited. Being equally appropriate for both, if one course is unlawful and the other lawful, we must presume the testator meant to do only that which he could lawfully do. Nor do I see how the express declaration that the trustees shall *hold* during the lives of his children can be regarded otherwise than as also containing the condition that they shall not hold beyond that time, and this is rendered more plausible by the fact that such limitation was required to make the trust legal. The power was to be executed, *eo instanti, upon* the death of the survivor. If not then executed, the persons and the interests to be conveyed were ascertained. At that instant, if not before, the entire estate became alienable.

I understand respondent to contend that the direction to hold during the lives of the children of the testator is a mode of indicating when the conveyances are to be made. But it seems to me that the only purpose of the trust was to deprive his children of all power to control, manage, or dispose of his estate, while enjoying the profits thereof, and to deprive the children of his son of all interest in it. All this was accomplished by the life trust. The direction to convey was adopted as a mode of ending the trust; so the estate then passed to the beneficiaries in full property, and the purpose of the testator in that regard was accomplished.

To repeat, we cannot doubt that the testator desired to accomplish these ends: 1. To provide ample revenue for each of his children during his or her life. 2. To prevent the descend-

ants of his son from inheriting any part of his estate. 3.
Upon the death of all his children, to give one half of his estate
to the descendants of his daughters, and the other half to his
brothers and sisters and their descendants.

Aside from some special legacies, these are all or the main
purposes sought to be accomplished. This can all be done
without violating any law and without giving an unnatural or
strained construction to any language contained in the will.
This will be admitted if the concession be made that it was
competent for him to create a power.

Originally, in the second division of the Civil Code, part II,
title IV, treated of uses and trusts, and title V of powers.
Title IV commenced with section 847: "Uses and trusts in re-
lation to real property are those only which are specified in
this title." Title V began: "Section 878. Powers in relation
to real property are those only which are specified in this title."
It is not contended that title IV conferred upon any one
the power to create uses and trusts. The sole purpose of the
provisions originally found in that title was to limit and
restrict the power of the owners of real property in that regard.
This intent is manifest. And, similarly, title V was an express
limitation upon the power of the owners of real property. The
language, "Powers . . . are those only which are specified," is
not a vesting of authority to do that which before could not
be done: it is an express restriction. I understand this to be
admitted, as indeed it must be.

The two titles were parts of one statute which recognized
the right to create uses and trusts and powers, and limited
such rights or authority to certain specified purposes. Two
years afterwards, the legislature repealed title V. So far as
affects this matter, the language of the repealing clause is only:
" Title V is repealed." Two sections were retained, however,
by being transferred to the title in regard to trusts. Section
900 was re-enacted as section 860, without the change of a
word, and section 895 was re-enacted as section 858. Section
860 provides for the event of the death of one of several donees
of a power. Section 858 provides for a power of sale in a
mortgagee. This is the only instance in the code, as it now
exists, where any power is expressly authorized. The reason
for this authorization is not far to seek. Supposing the right
to create powers to be in all other respects unlimited, the right
to create such a power, but for this section, would be forbidden

by the policy in this state in regard to mortgages, which is, that the mortgagee shall have, whatever the form of his contract may be, the right of redemption. This section declares an exception to that rule, and hence its necessity. Other sections recognize the existence of powers, but cannot be considered as authorizing them. Section 860 I have referred to. By section 781, a power of appointment does not prevent a future estate limited to take effect in case such power is not executed. This does not authorize any power, but regulates the effect. It does not state the purpose of the supposed power, except that it must refer to a power to convey land.

Section 1229 refers to a case where power to modify or revoke an instrument affecting real property is reserved to the grantor, or given to another. The section assumes the right to create such power, and states its effect in certain cases.

Section 1330 refers to a power to devise. It assumes the existence of the power, and states one case in which the power shall be deemed executed. Not a word in the section can be construed as authorizing such a power. These provisions existed when title V was in the code, and should have gone with it, if the repeal of that section was to be deemed the abolition of powers. If, on the other hand, the repeal merely did away with a restriction upon the right to create powers, they are still properly in the code, and have their proper use.

It seems to be argued that the title on powers was in reality an exception to the prohibition of uses and trusts contained in title IV, and that powers are trusts. For many reasons this cannot be so. Section 846 forbids this construction. *All* trusts which could be created were specified in that title. Powers were not there specified, but were in the same statute regulated, and limited in another title. I suppose all will admit that title IV has reference only to real property held in trust for certain purposes. And it will not be contended that a power is real property, or that in an instrument creating the power any interest is conveyed to the donee of the power. The donee of a power has no estate or interest in land, legal or equitable. And in this state there need be no equitable estate in any one, either in the creation or the execution of a power. An example of this is the case of an executor. He may be the donee of a power to sell land, and may execute it, but no equitable estate need be created in any one. (*Morffew* v. *San Francisco etc. R. R. Co.*, 107 Cal. 587.)

Section 857, it must be confessed, did not, when it was first passed, prohibit powers, for the use of powers was regulated in the same statute. How can a new meaning be put into it, then, by a statute which does not refer to it or the title in which it is found, and only says of title V, "It is repealed." Legislative policy can only be deduced from some language used by the legislature. The whole argument consists in denunciations of uses and trusts, and powers, as though powers were part of the same thing, and in contending that the legislature would not strictly limit trusts and leave powers at large. It did once restrict the use of powers, and then repealed the statute, in the face of section 4468 of the Political Code. In so doing it declared that the common law of England would furnish the rule upon the subject.

Certain expressions of law writers are cited, in which powers are declared to be trusts. Of course, powers, when given to be executed in the interest of another, are trusts. The power of an ordinary agent is a trust, and he holds it in trust for another. A public office has been said to be a public trust. A power in trust is a trust in the same precise sense, and in no other. Will any one contend that these are the sort of trusts dealt with in title IV?

But, it is contended, powers cannot exist in this state, for we have no statute of uses, and a power was but the right to appoint a use, which, under the statute, drew to it the legal title. I presume it was never contended before that powers did not exist at common law, and most likely the learned counsel for respondent do not wish to be understood as contending for that proposition. If they did not exist at common law, when were they authorized? Certainly not by the statute of uses. That statute recognized that they were in common use as to equitable estates, and its purpose was to crush out both trusts and powers. If the right to create a power did not exist, one could not have been made to dispose of equitable estates. Why were they efficacious as to equitable estates, and of no avail as to legal estates? and how did the statute enable the land-owner to dispose of freehold estates through the medium of a power? No doubt, powers, as known to the profession, are those which depended for their efficacy upon the statute of uses; and the reason why, in England, powers depended for their efficacy upon the statute of uses was because of the restrictions upon conveyancing which existed at common law. This is most con-

clusively and elaborately shown by Sugden in the introduction to his work on powers. It was not only, nor principally, because a freehold estate could be created only by livery of seisin, or by some other solemn and public transfer, but because freehold estates could not be created to commence *in futuro;* nor could a power be reserved to the grantor or given to any other person to limit the estate or create any charge upon it in derogation of the estates created by the original feoffment. The author proceeds to show some devices resorted to at common law, and how, by changing the beneficiary interest into mere equities, almost perfect freedom of alienation was attained, and then how, by the statute of uses, almost a like freedom of alienation resulted as to freehold estates; and, finally, he sums up the effect of the statute upon conveyancing, in the following words, which are not altogether in accord with the vehement denunciation of trusts and powers by the learned counsel for respondents: "The statute is generally considered as having had only the effect of enabling the conveyancer to shift the legal estate from one to another by mere words, in a way which ill accorded with the common law, but is excellently adapted to the increased opulence of the country. It, however, also gave *legal* effect to modifications of property, which were repugmant to the common law, but are admirably suited to the varying wants and wishes of mankind. It has, moreover, had the beneficial operation of introducing an unrivaled code of equitable jurisprudence, which every admirer of the law of real property must wish forever to remain sacred, and unconfounded with the strict rules of law. In comparing what the statute was intended to perform, with what it actually has performed, one can hardly doubt that almost any other legislative measure which opposed the confirmed habits of the people in disposing of their property would have led to the same results. This should operate as a lesson to the legislature not vainly to oppose the current of general opinion, for, although diverted for a time, it will ultimately regain its old channel, in spite of accumulated acts of Parliament, which become a dead letter, and have a strong tendency to bring the most wholesome laws into disrepute."

I repeat, therefore, that powers were not created by the statute of uses; but, as they existed in England, they depended for their efficacy upon the statute, because, and only because, by means of that statute they were relieved from the restrictions

upon·alienation which existed at common law, and of course
where these restrictions do not exist no statute is needed to
give efficacy to powers.

It is not a matter of interest to inquire whether everything
could be done here under a power which could have been
accomplished in England after the statute of uses. Doubtless,
the use of powers is subject to the restrictions which exist in
this state upon conveyancing, and in this case to all limita-
tions upon testamentary disposition of property. The direc-
tion in this will is to convey to ascertained persons, upon the
expiration of a lawful trust, definite and fixed interests in the
estate which had been the subject of the trust. The estates to
be conveyed were present estates in fee-simple. No reason
occurs to me why such a power should be held invalid.

I do not deem it necessary to discuss at length the assumed
implication from the authority given the executors in para-
graph 17 to sell property. That cannot affect my argument
that the testator intended to confer upon his executors a
power in trust. If the estate in fee did pass to the executors
to enable them to sell, surely the power ended upon the death
of the surviving child, and then the estate of the trustees
would necessarily end. There is nothing inconsistent in re-
garding them as trustees for the purposes of the lawful trust,
and donees of a power to convey the property when the trust
estate ends.

I have only to add that I still concur with Mr. Justice Har-
rison in the view that the will may also be maintained as a di-
rect devise, if powers do not exist in this state.

HARRISON J., dissenting.—I dissent from the order of
affirmance, upon the grounds stated in the opinion given by
me at the former hearing of the cause. I also concur in the
foregoing opinion of Mr. Justice Temple.

. BEATTY, C. J., dissenting. — A careful consideration of the
arguments advanced upon the rehearing of this case has con-
vinced me that the opinion which I formerly expressed requires
modification, and especially that my conclusion that the
intent of the testator might be given effect as a direct devise of
the remainder cannot be sustained upon the concession that
the only means chosen by him for effecting the transfer was
unlawful. There are decisions which sustain, and others

CXXXII. Cal.—36

which in their expressions seem to sustain, such a conclusion; but I am satisfied that the weight of authority is the other way, and that whenever it appears that a testator has attempted to transfer his estate by a method clearly unlawful, the attempt must fail. His lawful intention cannot be carried into effect by disregarding the unlawful means chosen by him for its accomplishment. It therefore becomes essential for me, in order to reach a conclusion in the case, to determine the question, which in my former opinion was treated as unimportant. That question, as it presents itself to my mind, may be stated thus: If, in the creation of a valid testamentary trust, the testator directs and empowers his trustees upon the termination of the trust to convey the remainder, is that an unlawful means of transferring the property to the objects of his bounty?

A trust to convey is, of course, forbidden by statute, and if the will of Senator Fair attempts to create a trust to convey, it must, at least to that extent, fail. If his grandchildren and brothers and sisters can take only through the medium of such unlawful trust, they cannot take at all.

But to me it seems a misuse of terms to say that this is a trust to convey. It is a perfectly valid trust for other purposes, and for a lawful term. The conveyance which the trustees are directed to make at the termination of the trust is a mere incident. I still adhere to my original opinion, that although upon its more obvious construction the will was designed to create an invalid trust to convey, in addition to the valid trust or trusts it is nevertheless susceptible of a construction more favorable to testacy, which, for that reason, it is our duty to adopt. I still think it can be construed as a devise to the trustees of a life estate only, with an added power to convey the remainder, and I am not shaken in this opinion by the argument so much insisted upon in the opinion of the court, that an estate in fee in the trustees was essential to enable them to carry out the evident purposes of the testator. If he could create a lawful power to convey, as distinct from a trust to convey, the trustees could, under such power, not only transfer and convey the remainder to the grandchildren and brothers and sisters, but they could also sell and convey, and reinvest the proceeds of, any of the property embraced in the trust, as by one clause of the will they were authorized and empowered to do. In *Morffew v. San Francisco etc. R. R. Co.*, 107 Cal. 587, it was held by this court that the donee of a testa-

mentary power could make an effectual conveyance of an estate in which she had no interest. It is true that the power in that case would have been lawful as a trust, and the case is only cited to prove that this court has heretofore approved the doctrine—which it would seem difficult to deny—that an estate may be conveyed under a power as effectively as by a trustee in whom the estate is vested.

It only remains, therefore, to inquire whether, under the laws of California, it is competent for the creator of a trust, whether by will or deed, to empower his trustee, at the expiration of the trust term, and upon the completion of his trust duties, to transfer and convey the property to the person or persons to whom the grantor or testator desires it to go. Unless such power is denied or forbidden by positive law, there is no conceivable reason why it should be held unlawful. It contravenes no policy declared or implied in any of the statutory law of the state, and is sanctioned by the most elementary principles of the common law. It is one mode, and a perfectly natural, just, and unobjectionable mode, of doing what is expressly authorized by section 864 of the Civil Code, with reference to which I can only repeat what I said in my former opinion.

Upon these grounds I dissent from the judgment of affirmance.

The following is the opinion of Mr. Justice Harrison, rendered in Bank on the 26th of February, 1900, upon a prior hearing:—

HARRISON, J.—Senator Fair died, December 28, 1894, leaving a last will and testament, which was admitted to probate in the superior court for the city and county of San Francisco, November 16, 1896, and letters testamentary thereon were on the same day issued to W. S. Goodfellow, James S. Angus, and Thomas G. Crothers, who were named in the will as its executors. The testator left surviving him, as his heirs at law, three children; viz., Charles L. Fair, Virginia Fair, and Theresa A. Oelrichs, wife of Herman Oelrichs. Prior to his death, there had been born to Mrs. Oelrichs one child, Herman Oelrichs, Jr., who is still living and an infant. Fair also left him surviving three brothers and two sisters, and certain descendants of a deceased brother. After the expiration of four months from the issu-

ance of letters testamentary upon the will, the children of the decedent made an application to the superior court, under section 1658 of the Code of Civil Procedure, for the distribution to them of sundry parcels of real estate belonging to the estate of which their father died seised, alleging in their petition that the said real property was not disposed of by said will, and that, as the heirs at law of the decedent, they were entitled to the same. Goodfellow, Angus, and Crothers, as executors of the will, and also as trustees named therein, filed an answer to this petition, in which they denied that the said property was not disposed of by the will, and alleged that by virtue of its provisions they were entitled to the full and undisturbed possession of all of the property, and of the rents, issues, and profits thereof, for the uses, purposes, and trusts mentioned and described in said will, giving also the names of those in whose behalf they claimed the trust had been created. Herman Oelrichs, Jr., together with certain infant beneficiaries provided for in the fifteenth paragraph of the will, appeared by their guardian *ad litem* appointed therefor, and filed a similar answer to the petition. Upon the hearing of the petition, the court found that the trust provided for in the will was, and is, as to all of said real estate, null and void in its creation, that the testator did not dispose of any of his real estate by his will, and that the petitioners are entitled to the whole of said real property; and thereupon entered a decree distributing the same to them in equal shares as tenants in common. From this decree Goodfellow, Angus, and Crothers have appealed, both in their capacity as trustees under the will and also as executors; and an appeal has also been taken on behalf of the infant beneficiaries, who had appeared by their guardian *ad litem*.

The ground upon which the superior court held the trust created by the will to be invalid, and which is maintained by the respondents herein, is, that it contravenes the provisions of section 857 of the Civil Code, in that it authorizes the trustees, upon the death of the last surviving child of the testator, to transfer and convey the trust property to the persons therein designated. The court further held that this trust was so inseparably connected with the otherwise valid trust to receive the income of the property and apply the same to the use of the children of the testator during their lifetime, that, in view of the legal consequences flowing from its inva-

lidity, it could not be presumed that the testator intended that the latter trust should be effective.   It therefore held that the entire trust was invalid, and that the testator had died intestate as to the real property described in the complaint. The appellants concede that a trust created merely for the purpose of conveying real property to another is unauthorized; but claim that the provision in the will of Senator Fair, that upon the death of his last surviving child the trustees shall transfer and convey the trust estate to the persons therein designated, was not one of the "purposes" for which he created the trust; that the trust created by the will is an executed trust; that the trustees have only an estate in the property *pur auter vie*, which will terminate at the death of the last surviving child; that at the death of the testator the persons to whom he directed the property to be transferred and conveyed were vested with a remainder of his estate which will vest in possession at the death of his last surviving child, and that the estate which will then be vested in them will neither require nor admit a conveyance from the trustees for the purpose of clothing them with any interest in the property.

It is manifest from the terms of paragraph 15 of the will that it was the desire of the testator that his children should have no interest in his estate, other than the income thereof, during their lives, and that they should have no voice in the management or control of his estate; that no part of his estate, or of the income thereof, should ever belong to the issue of his son Charles; and that upon the death of the last surviving child one half of his entire estate should belong to the descendants of his two daughters, or of the survivor of them, and the other half, in equal shares, to his brothers and sisters, and their descendants by right of representation.   If there is no legal objection to the form in which this desire has been expressed, it has become the will of the decedent, which the beneficiaries therein named are entitled to have enforced.   The will of a testator is his expressed intention to dispose of his property in accordance with his desires, and if this intention is expressed in conformity with the requirements of law, it is the duty of courts to give it effect. The right of the owner of property to make a testamentary disposition thereof according to his own choice or preference is a wise provision of legislation, and its exercise within the

limits fixed by the statute is a sacred right, which courts ought always to uphold.

Certain well-settled rules of interpretation are, that the will shall receive such a construction as will make it effective, rather than void (Civ. Code, sec. 1643; *Toland* v. *Toland*, 123 Cal. 140); and that, of two modes of interpreting a will, that shall be preferred which will prevent intestacy. (Civ. Code, sec. 1326; *Le Breton* v. *Cook*, 107 Cal. 410.) The primary rule of all interpretation is, that the will is to be construed according to the intention of the testator. (Civ. Code, sec. 1317.) For the purpose of ascertaining this intention, the language employed by him is to be interpreted by legal rules of construction, and the words used in the clause to be construed are to receive the first consideration; but his intention is the ultimate object to be sought in determining the construction to be given to these words, and is to be ascertained upon a consideration of the entire instrument. "We must take into account the other provisions of the will, and the general purpose deducible from its terms, for the purpose of ascertaining the intention of the testator, as expressed by his language." (*Matter of Young*, 145 N. Y. 538.) If this intention is clear, it will control the meaning that would otherwise be given to particular words or phrases used by him. When the general intention is thus ascertained, it will control any particular intention which relates merely to the manner in which such general intention is to be carried into effect, and the terms employed by the testator are to be liberally construed, for the purpose of giving it effect, provided it is consistent with the rules of law. (*Welsh* v. *Huse*, 49 Cal. 509.) "It is a familiar rule in the construction of wills, that the intention of the testator is to govern, although it may be opposed to some of the words of the will, and that the general intention is to control any particular intention, especially when the particular intention relates to the manner by which the general intention is to be effectuated." (*Malcolm* v. *Malcolm*, 3 Cush. 477.) The rule was stated by the master of the rolls in *Thellusson* v. *Woodford*, 4 Ves. 329, as follows: "If the court can see a general intention consistent with the rules of law, but the testator has attempted to carry that into effect in a way that is not permitted, the court is to give effect to the general intention, though the particular mode shall fail." In determining whether the language of the will will permit

effect to be given to the intention, "the question is, not
whether the language will bear some other construction,—a
construction which will defeat the intention, or render the pro-
visions of the will illegal and void,—but whether it will per-
mit a lawful intention to have effect." (*Everitt* v. *Everitt*, 29
N. Y. 95.) After the intention has been thus ascertained,
courts will then apply the rules of law for the purpose of deter-
mining whether such intention can be carried into effect.
If it contravenes any provision of law, the will will be held in-
valid, not for the reason that it does not express the intention
of the testator, but because the law will not permit such inten-
tion to be carried into effect.

Section 857 of the Civil Code limits the creation of express
trusts in real property to the purposes therein enumerated.
As this section does not authorize the creation of a trust in
real property for the purpose of conveying it to another, it
ought not to be held that such conveyance was one of the "pur-
poses" for which the testator intended the trust created by his
will, unless such construction is demanded upon a considera-
tion of the entire instrument, including the manifest objects
and purposes of the will, as well as the language used by him
in this direction to the trustees. (*Manice* v. *Manice*, 43 N. Y.
362.) Courts lean in favor of the preservation of all such
valid objects of a will as can be separated from those that are
invalid, without defeating the general intent of the testator.
(*Harrison* v. *Harrison*, 36 N. Y. 547.) Section 1317 of the
Civil Code declares that "where the intention cannot have
effect to its full extent, it must have effect as far as possible."
In *Cross* v. *United States Trust Co.*, 131 N. Y. 339,[5] the prin-
ciple was stated to be, that where several trusts are created by
a will, which are independent of each other, and each complete
in itself, some of which are legal and others illegal, and the
legal can be separated from the illegal, and upheld without
doing injustice or defeating what the testator might be pre-
sumed to wish, the illegal trusts may be cut off and the legal
permitted to stand.

For the purpose, therefore, of determining whether the pro-
vision in the will for a conveyance of the trust property defeats
the entire trust, it is proper to consider whether such convey-
ance is essential to carrying into effect the intention of the tes-

[5] 27 Am. St. Rep. 597.

tator with reference to the disposition of his estate at the death of his last surviving child, and whether his general intention in reference to the property will be in any respect affected by disregarding this provision. Substance is not to be sacrificed to form, and if this provision is only a direction to the trustees to do that which they would have been authorized to do without the direction, or if the same result would follow with or without such conveyance, or if the persons to whom they are directed to transfer and convey the property would have the same interest therein, whether such conveyance is made or not, or would be entitled to demand such conveyance irrespective of this provision, the direction to convey the property does not become a "trust," even though it has been so termed in the will, and the execution of the conveyance will be held not to be one of the "purposes" for which the trust was created.

The trust created by the will of Senator Fair is an executed rather than an executory trust; that is, all of the directions for its execution are expressed in the will, so that the trustees have nothing to do but to carry out its provisions in accordance with the letter of the will. There are no duties to be performed by them, in regard to the conveyance, which involve the exercise of judgment or discretion on their part, or in which they are to act in accordance with the direction of any other than the testator. In the language of the books, the testator has been his own conveyancer. He has expressed in definite terms the form of the conveyance which the trustees are to make, the property to be conveyed, and the persons to whom the conveyance is to be made.

An executed trust may at the same time be an active trust; that is, the trustees may have active duties to perform during the continuance of their estate, such as the care and improvement of the property, the receipt and application of its income. If, however, at the termination of their estate, the property will, under the terms of the trust, vest in the ultimate beneficiaries without any act or duty on the part of the trustees, it is an executed trust at the date of its creation. Mr. Perry, in his treatise on Trusts, says (sec. 359): "All trusts are executory in one sense of the word; that is, the trustee must have some duty, either active or passive, to perform, so that the statute of uses shall not execute the estate in the *cestui que trust* and leave nothing in the trustee. But such is not the meaning of judges when they speak of executed trusts and executory trusts.

These words refer rather to the manner and perfection of their creation, than to the action of the trustee in administering the property. Thus a trust created by a deed or will, so clear and certain in all its terms and limitations that a trustee has nothing to do but to carry out all the provisions of the instrument according to its letter, is called an *executed* trust. On the other hand, an executory trust is where an estate is conveyed to a trustee upon trust to be by him conveyed or settled, upon other trusts, in certain contingencies or upon certain events, and these other trusts are imperfectly stated, or mere outlines of them are stated, to be afterwards drawn out in a formal manner, and are to be carried into effect according to the final form which the details and limitations shall take under the directions thus given. They are called *executory*, not because the trust is to be performed in the future, but because the trust instrument itself is to be molded into form and perfected according to the outlines or instructions made or left by the settlor or testator." The connection in which the phrase "conveyed or settled" is used in the text clearly indicates that these words are used as equivalents, and that the conveyance therein referred to is one which is to be made by way of settlement. In a note to this section the author says: "A mere direction to convey will not render the trust executory, if the directions are so clear and the limitations are so certainly defined that there is nothing to do but to convey in accordance with them. In order that the trust may be executory, there must be some room for construction, in order to determine the intention of the settlor; that is, to determine what limitations shall be made, and what shall not be introduced into the conveyance to be made."

Mr. Pomeroy (2 Equity Jurisprudence, sec. 1000) says: "Giving property to a trustee upon trust to convey to a person, or upon trust to convey it upon certain specified trusts, does not render the trust executory"; and gives the following quotation from the opinion of Lord St. Leonards in *Egerton* v. *Earl Brownlow*, 4 H. L. Cas. 210: "All trusts are in a sense executory, because a trust cannot be executed except by conveyance, and therefore there is something always to be done, but that is not the sense which a court of equity puts upon the term 'executory trust.' A court of equity considers an executory trust as distinguished from a trust executing itself, and distinguishes it in this manner: Has the testator been

what is called, and very properly called, his own conveyancer? Has he left it to the court to make out from general expressions what his intention is? or has he so defined that intention that you have nothing to do but to take the limitations he has given to you, and to convert them into legal estates?"

It is sometimes provided in the instrument creating the trust, that after the execution of the trust specifically prescribed the trustees shall *divide* the trust property, and upon such division convey it to certain beneficiaries then to be ascertained. In such cases the trust is executory, and the beneficiaries take no interest in the property, except by virtue of the conveyance. The trustees are clothed with a discretionary power, which can be exercised only by themselves, or under the supervision of a court of chancery. (*Gilman* v. *Reddington,* 24 N. Y. 9; *Manice* v. *Manice,* 43 N. Y. 303; *Cooke* v. *Pratt,* 98 N. Y. 35; *De Kay* v. *Irving,* 5 Denio, 646.) So, too, when the conveyance is to be made in accordance with the appointment of a designated beneficiary or a third person, the trustees have an active duty to perform for the purpose of completing their trust, and the author of the trust is not his own conveyancer. In the present case, however, the trustees are not directed or authorized to divide the trust property, and any attempted division by them would be in excess of their power and nugatory. They are authorized simply to convey, upon the death of the last surviving child of the testator, one fourth part of the estate to the descendants of his daughter Theresa Oelrichs, one fourth part to the descendants of his daughter Virginia, and the remaining one half to his brothers and sisters, and to the children of any deceased brother or sister by right of representation. The conveyance, as thus authorized, is of undivided portions of the estate, and those to whom it is to be made will hold the same as tenants in common.

In *Bruner* v. *Meigs,* 64 N. Y. 506, the testator devised his whole estate to trustees upon a trust, among others, to divide the same into as many shares as he left children surviving him, and to apply the income of each share to the use of the child for whom it was held, and upon the death of such child to convey and transfer the share of the estate held for it to certain designated beneficiaries. The court held that "the power and direction to transfer and convey the share or portion of the estate to those entitled under the will, after the death of the

*cestui que trust* for life, did not constitute a trust, or require
the estate to be vested in the executors and trustees named."

In *Bacon's Appeal*, 57 Pa. St. 504, the testator devised property
to trustees, in trust, to receive the income and pay the same to
his daughters, respectively, during their lives, and after their
decease to convey the same to their respective heirs. It was
held, that, as the trustees were but the conduit through which
the title was to pass, no conveyance was necessary, the court
saying: "In this state, when lands are given by will, in trust,
to be conveyed, when no other power or duty is assigned to
the trustee, when he has nothing to do with the enjoyment of
the property, and is only an instrument to enable the *cestui
que use* to acquire the legal estate, it has been understood that
the conveyance is unnecessary. At most, it can be but a mat-
ter of form, rather than of substance. The *cestui que trust*,
being entitled to the whole beneficial enjoyment, and the trus-
tees having no right to interfere with it, no reason is apparent
why a legal title should be held continuing in the latter. A
severance of the legal right from the beneficial ownership is
not to be maintained without some reason. In the case before
us, the purpose of the trust was accomplished when Mrs. Ba-
con died. The testator did not intend that the trustees should
hold any estate after her death. He contemplated its immedi-
ate transmission to the remaindermen,—a transmission by
conveyance, indeed, but no holding in trust for those in re-
mainder. There was, therefore, nothing substantial to be se-
cured by treating the legal title as remaining in the trustees
and only an equitable interest in Mrs. Bacon."

In *Weston* v. *Weston*, 125 Mass. 268, the testator gave the
residue of his property to trustees upon the trust to apply a
portion of the income to the support of the widow, and after
her death to "convey, transfer, and pay" the trust estate to
his children. The court said: "We are of opinion that
the will gave to Nathanael and Lucy each a vested equitable
estate expectant on the termination of the life estate of the
testator's wife, and liable to be divested only on her death
during the life of the testator's wife without issue. The inter-
est in the residue was given by the will, not by the conveyance
from the trustees. Such conveyance is necessary only to
make that a legal estate or interest which under the will and
prior to the conveyance was an equitable interest. It was an
equitable remainder after the equitable life interest of the tes-

tator's wife, and vesting immediately on the death of the testator."

In *Phipps* v. *Ackers*, 9 Clark & F. 583, the testator devised his estate to trustees, in trust, to convey it to his godson on his attaining the age of twenty-one years. The question before the court was the right to the income that had accrued during his minority, and this was held to depend upon whether the remainder was vested in him at the death of the testator. It was held that the son took a vested estate in fee, liable to be divested in the event of his dying under the age of twenty-one. In giving his opinion, Lord Lyndhurst said: "The question to be considered is, whether the direction to convey makes any difference with respect to the disposition of the property. I am clearly of the opinion that it does not, and I agree entirely in what fell from Sir William Grant in the case of *Stanley* v. *Stanley*, 16 Ves. 491, that the right is not affected by the direction to convey, but that the conveyance must conform to the right, and that the will itself is an equitable conveyance until that is displaced by the legal conveyance which is directed to be made."

In *Campbell* v. *Stokes*, 142 N. Y. 23, the testator devised his estate, in equal shares, to trustees, to be held by them for each of his children, to apply the income thereof to their use, and, upon the death of a child for whom the same was held, to convey, transfer, and pay over the share to its issue. Upon this provision of the will the court said: "The direction that the trustees, on the death of the parent, should 'convey, transfer, and pay over and deliver' the parent's share to his or her issue was inserted to emphasize the right of the remaindermen, and was not the foundation of their title. The whole scope of the will negatives the idea that their rights were dependent in any way on the action of the trustees, or that the vesting of their interests awaited the exercise by the trustees of the power to transfer, convey, and deliver the share to the issue so entitled. The testator did not intend to die intestate as to any portion of his property. The whole was given to his children and their issue. The trust was created to secure to his sons and daughters the beneficial enjoyment of their several shares for life, and to preserve the principal for their issue."

In *Toms* v. *Williams*, 41 Mich. 566, the testator devised his estate to trustees, in trust, to make certain dispositions of the

income, and thereafter to transfer and convey the property to the children of his deceased brother. The court held that the making of the conveyance would be the mere execution of a formal transfer of what had already passed in fact, and that the failure to make the conveyance would not deprive those persons of the estates which had vested in them, saying: "The will itself creates the rights and points out their owners."

In *Cushing* v. *Blake*, 30 N. J. Eq. 689, it was held that "a mere direction to the trustee to convey will not convert a trust into an executory trust. If the trusts are fully and accurately expressed, the rights of the beneficiaries are not affected by the direction to convey. The conveyance must conform to their rights as declared, and the equitable estate vests immediately." (See also *Gilman* v. *Reddington*, 24 N. Y. 9; *Moore* v. *Appleby*, 36 Hun, 368; affirmed 108 N. Y. 237; *Doe* v. *Considine*, 6 Wall. 458; *Bowen* v. *Chase*, 94 U. S. 812; *Scofield* v. *Olcott*, 120 Ill. 362.)

*Townshend* v. *Frommer*, 125 N. Y. 446, is relied upon by respondents as holding a different rule in New York from that expressed in the foregoing cases from that state; but we are of the opinion that it was not so intended by the court. The rule which was declared in *Moore* v. *Appleby* is neither overruled nor questioned in the opinion, and in the subsequent case of *Campbell* v. *Stokes* the rule in *Moore* v. *Appleby* was followed, and *Townshend* v. *Frommer* disregarded; and later, in *Paget* v. *Melcher*, 156 N. Y. 399, it was, in effect, declared that a direction to the trustees to convey the estate to a designated class upon the termination of the lives for whose benefit the trust was established, created a vested remainder in that class. There are also other expressions in the opinion which are not in harmony with other opinions by the same court, and it is in professed disregard of *Bowen* v. *Chase*, 94 U. S. 812. The action was ejectment, for certain property which had been conveyed to a trustee, subject to a mortgage then existing upon it, upon trust to apply the income to the use of Mrs. Curtis during her lifetime, and "upon the further trust" to convey the same, at her death, *in fee-simple*, to such of her children as should then be living. This mortgage had been foreclosed in an action brought in the lifetime of Mrs. Curtis, against herself and the trustee, but her children then living were not made parties to the suit. The plaintiff's right to the land was derived through conveyances from the children of Mrs. Curtis,

and the defendant's right, through the sale under this foreclosure. The question to be determined by the court was, whether the children of Mrs. Curtis were necessary parties to the foreclosure, and underlying this question was a determination of the character and extent of the estate taken by the trustee. The court held that the trust deed conferred upon the trustee the entire estate in the land, and also a power in trust to convey the same to the children upon the death of Mrs. Curtis; that, therefore, the children had only a contingent remainder, which would not vest in interest until her death, and consequently they were not necessary parties to the foreclosure. To the extent that this decision rests upon the statement in the opinion that the element of contingency was caused by the uncertainty as to the precise persons in whom would exist the right to enforce the execution of the power in trust, and the conclusion that this uncertainty prevented the remainder from vesting, it is at variance with the provisions of section 694 of the Civil Code of this state, and is not in accordance with other decisions in that state. (See *Levy* v. *Levy*, 79 Hun, 290.) The case itself does not appear to have been followed in any subsequent case in that court, nor does the rule therein stated appear to have received the approval of the courts of that state. In *Campbell* v. *Stokes, supra,* the same court affirmed the rule declared in *Moore* v. *Appleby, supra,* and, after saying that the case of *Townshend* v. *Frommer, supra,* was not intended to overturn the doctrine therein declared, said: "The case was peculiar and anomalous, and involved complicated questions under the law of trusts and powers." *Levy* v. *Levy,* 79 Hun, 290, involved the same question, and in commenting upon *Townshend* v. *Frommer,* the court said: "After an examination and comparison of that case with the decision in the case of *Campbell* v. *Stokes,* I have been unable to reconcile the same. And as the rule laid down in the latter case in respect to the vesting of estates seems to be that which most clearly conforms to the provisions of the revised statutes defining such estates, it should be followed." Mr. Chapin, in his treatise on Express Trusts, says (p. 498): "But, in general, the case of *Townshend* v. *Frommer* must be regarded as highly peculiar, and be treated with caution." The court itself appears to have been impressed with the peculiarity of the case, as may be seen by its remarks (p. 461): "In view of the many phases of uses and trusts presented to the courts, it is not remarkable that we

should find observations in the opinions of judges not easily reconcilable with the conclusion in a particular case.  I am not aware that any case presenting the precise question here can be found, though some may have a likeness in particular features."   It is also worthy of observation that the opinion in *Campbell* v. *Stokes* was written by Judge Andrews, who dissented from the opinion in *Townshend* v. *Frommer*, and was concurred in by the entire court, including five of the judges who had rendered the decision in *Townshend* v. *Frommer*.   It is quite possible that there were facts in the record which are not fully stated in the report of the case, from which the court was led to the conclusion that the trustee took the entire fee in the land, and that the children took no estate therein; and this conclusion may also have been reached upon the ground, that, as the land was conveyed to the trustee with a power in trust by which he was required to convey the estate "in fee-simple," he took such an estate by the trust deed.   (See *Doe* v. *Field*, 2 Barn. & Adol. 564.)

Under the provisions of the will the trustees take an estate in the land devised to them, during the lives of the testator's children and the survivor of them, and no more.   There are no words therein expressing an intention to confer upon them a fee in the land, its language being that they are "to have and to hold the same, in trust, during the lives" of the testator's children, and in further trust to dispose of the income "during the life or lives" of said children.   Section 871 of the Civil Code provides: "When the purpose for which an express trust was created ceases, the estate of the trustees also ceases."   The "estate of the trustee" is that which is necessary to enable him to execute the trust imposed upon him.   The estate embraced in the trust—that is, the extent or *quantum* of interest taken by him—is determined by a consideration of the objects and purposes of the trust, rather than by a strict application of legal rules to the construction of the terms of the conveyance by which the estate is limited to him.   (*Sears* v. *Russell*, 8 Gray, 86.)   If an estate in fee is necessary to enable him to perform the duties of the trust, such estate will be held to have been taken by him, even though it is not given in express terms, and, on the other hand, though the form of the conveyance is such as would imply a fee, if necessary for the purposes of the trust, his estate will cease upon the complete execution of the trust.   "Where no intention to the contrary appears,

the language used in creating the estate will be limited to the purposes of its creation." (*Doe* v. *Considine, supra.*) Mr. Perry says (sec. 320): "The general rule is, that, whether words of inheritance in the trustee are or are not in the deed, the trustee will take an estate adequate to the execution of the trust, and no more nor less. Courts will abridge the estate where words of inheritance are used, if the execution of the trust does not require a fee, and so they will enlarge the estate if no words of inheritance are used in a deed." Jarman, in his treatise on Wills, says (vol. 2, p. 1155): "Trustees take exactly that quantity of interest which the purposes of the trust require, and the question is, not whether the testator has used words of limitation, or expressions adequate to carry an estate of inheritance, but whether the exigencies of the trust, as they appear on the face of the will, or refer to events subsequent to the testator's death, demand the fee-simple, or can be satisfied by any, and what, less estate."

The provision in section 863 of the Civil Code, that, "except as hereinafter otherwise provided, every express trust in real property, valid as such in its creation, vests the whole estate in the trustees, subject only to the execution of the trust," is limited by the succeeding sections to the estate given to the trustee for the purposes of the trust, and does not include any estate in the property which is not required by the trust. (*Morffew* v. *San Francisco etc. R. R. Co.*, 107 Cal. 587.) This is clearly implied from the provision in section 866 of the Civil Code, that "every estate not embraced in the trust, *and not otherwise disposed of,* is left in the author of the trust or his successors," and by the provisions of section 864, that, notwithstanding the provision of the previous section, the author of a trust may, in its creation, prescribe to whom the real property to which the trust relates shall belong at the termination of the trust. If, in the creation of the trust, he desires to dispose of any estate in the property which is not embraced in the trust, he need not use the term "prescribe" or "shall belong" in order to make his purpose effective, but if he incorporates into the trust instrument an intelligible designation of the persons that he wishes to enjoy the property upon the termination of the trust, or to whom he wishes the property to go, he will be held to have "prescribed" an intention that the estate "shall belong" to those persons, and thus to have "otherwise disposed of" the estate. Whether he has prescribed any

such intention is to be determined upon a proper construction
of the language used by him, considered with reference to the
manifest purpose of his will, as deduced from the entire instru-
ment.    In *Scofield* v. *Olcott*, 120 Ill. 362, the will provided for
the support of the testator's widow, during her lifetime, out of
the income of the estate, and that thereupon certain legacies
should be paid, and upon their payment the trustees should
convey, assign, and deliver all the rest and residue of his es-
tate to his son.    The court said: "The testator in this case
evidently intended that the whole of the remainder of his es-
tate should be used for the support of his wife as long as she
lived, and that upon her death, and after the payment of cer-
tain legacies, the residue should *belong* to his son," and held
that it vested in him at his father's death, notwithstanding
the provision in the will for a conveyance to him by the trus-
tee.    In *Gilman* v. *Reddington*, *supra*, where the will provided
that upon the happening of a certain event the trust property
was to be "paid, conveyed, or made over" to certain benefi-
ciaries, it was held that during the term of the trust the title
was wholly in the trustees, *as a temporary estate*, but that there
was created a devise of the future estate as a remainder in fee,
which vested in the beneficiaries at the death of the testator,
and that they would be entitled to the possession and enjoy-
ment of the estate at the expiration of the trust.    In *Manice*
v. *Manice*, 43 N. Y. 378, the court said: "The direction to the
trustees to pay over the principal share of each grandchild on
his or her attaining the age of twenty-one years is a sufficient
devise of the property, and will vest it in the devisee."    In
*Moore* v. *Appleby*, *supra*, it was held that under a statute con-
taining the same provision as in section 863, it was designed
that the trustee in the case of an express trust should be vested
with so much of the estate during the continuance of the trust
as should be necessary to maintain and execute it, and subject to
that that the property in remainder should *devolve* upon the
persons entitled to it in remainder, and that the remainder
thus vested was not defeated by a direction to the trustees to
transfer and convey the estate to the remaindermen upon the
death of the life *cestui que trust*, for the reason that such direc-
tion was not a purpose for which an express trust was author-
ized.

The law favors vested rather than contingent remainders,
CXXXII. Cal.—37

and in any case of uncertainty courts will construe the words of a will so that the remainder will vest at as early a period as possible. Words, in a will, directing land to be conveyed to or divided among remaindermen after the termination of a particular estate are always presumed, unless clearly controlled by other provisions of the instrument, to relate to the beginning of enjoyment by the remaindermen, and not to the vesting of the title in them. The uncertainty of the right of enjoyment, and not the uncertainty of its actual enjoyment, is what renders the remainder contingent. When the person to whom the remainder, after a life estate is limited, is ascertained, and the event upon which it is to take effect is certain to happen, it is a vested remainder, although, by its terms, it may be entirely defeated by the death of such person before the determination of the particular estate. It is the present *capacity* of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, that distinguishes a vested from a contingent remainder. (*Williamson* v. *Field*, 2 Sand. Ch. 553; *Moore* v. *Littel*, 41 N. Y. 66; 4 Kent's Commentaries, 203.) Where an estate is granted to one for life, and to such of his children as shall be living after his death, a present right to the future possession vests at once in such children as are living, subject to open and let in after-born children, and to be divested as to those who shall die without issue. (*Croxall* v. *Sherrerd*, 5 Wall. 288; *McArthur* v. *Scott*, 113 U. S. 380; *Gilman* v. *Reddington*, 24 N. Y. 9; *Brown* v. *Lawrence*, 3 Cush. 397; *Blanchard* v. *Blanchard*, 1 Allen, 223.)

These principles are embodied in the following provisions of the Civil Code: "Testamentary dispositions, including devises and bequests to a person on attaining majority, are presumed to vest at the testator's death." (Sec. 1341.) "A testamentary disposition to a class includes every person answering the description at the testator's death; but when the possession is postponed to a future period, it includes, also, all persons coming within the description before the time to which possession is postponed." (Sec. 1337.) "A future interest is vested when there is a person in being who would have a right, defeasible or indefeasible, to the immediate possession of the property upon the ceasing of the intermediate or precedent interest." (Sec. 694.)

At the death of the testator there were living, of the beneficiaries designated in paragraph 15 of his will, the infant son of Mrs. Oelrichs, five brothers and sisters, and the issue of a deceased brother. These persons will have a right to the immediate possession of his property upon the termination of the estate of the trustees, defeasible, however, upon their death before that time; and if before the time for such possession shall arrive there shall be other persons born into the class for whom provision is made in the will, they will be included in such provision. If the testator's children had all died the day after his own death, the estate of the trustees would have terminated, and the child of Mrs. Oelrichs would have been entitled to the possession of one half of the estate, and his collateral kindred to the other half.

The foregoing considerations lead to the conclusion, that by the will of Senator Fair an equitable remainder in his estate was devised to the persons to whom the trustees were directed to convey upon the death of his last surviving child; that this remainder vested in those persons at the death of the testator, defeasible, however, upon their death prior to the death of his last surviving child, and subject to open and let in after-born members of the designated classes; that upon the death of the testator's last surviving child the estate of the trustees in the property will terminate, and a conveyance from them will neither enlarge nor diminish this remainder, but it will immediately vest in possession without any conveyance; that the provision for such conveyance did not create any "trust" in the property, but was a mere direction to the trustees to make effective the other provisions of the will, and is not to be construed as one of the "purposes" for which the testator created the trust.

The will does not suspend the power of alienation for a longer period than during the lives of persons in being at the death of the testator. The fact that a child of either of the testator's daughters, or of either of his brothers or sisters, may be *en ventre sa mere* at the death of his last surviving child, will not have this effect. Such fact cannot be invoked to impair the validity of the trust. It is only the *power* of alienation which the statute forbids to be suspended, and this power is not suspended by reason of any difficulty or inconvenience that may attend its exercise. The suspension of alienation which is aimed at by the statute is such as is caused by the instru-

ment creating the estate, and not such as arises from some disability on the part of the person in whom the estate is vested, such as infancy or other incapacity, or from any other cause outside of the instrument. (*Toland* v. *Toland*, 123 Cal. 140; *Moore* v. *Littel*, 41 N. Y. 66; *Beardsley* v. *Hotchkiss*, 96 N. Y. 214.) Section 29 of the Civil Code provides: "A child conceived, but not born, is to be deemed an existing person, so far as may be necessary for its interests, in the event of its subsequent birth"; and section 1339 of the Civil Code provides: "A child conceived, but not born until after a testator's death, or any other period when a disposition to a class vests in right or in possession, takes answering to the description of the class."

The decree of distribution should be reversed.

Rehearing denied.